## Goodpaster et al. v. Catlett et al.

(Decided Oct. 22, 1935.)

CHARLES D. GRUBBS for appellants.

ROBERT H. WINN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The determination of this case requires a construction of the will of A. J. Ewing. He died in 1890, a resident of Bath county, leaving a widow, seven daughters, and one son.

The first clause of his will devises to his widow one-third of his estate "for and during her life," with the privilege, if she wanted the executor to dispose of it as directed in the will, to direct him to do so. To Julia Owings it devises "the Montgomery County farm" "to be her separate and sole property * * * to be held by her during her life and at her death to vest in her children and their descendants equally." To Jenela Gatewood, the Bondurant farm "to be held by her during her life as her separate estate, and at her death to descend to her children equally." To Elva Catlett, a residence and 164 acres of land, and also $10,000 in money, "to be held for her exclusive use and benefit by his executor, or some trustee. The said real estate to be for her separate and sole use during her life and at her death to descend to her children equally. The money aforesaid remaining at her death to pass the same as the lands to her children." To Serepta Ewing it bequeaths $20,000, to be held by his executor "for her use and benefit during her life," and at her death to be equally divided between my other children,

that she is to have and enjoy the profit of said fund and liberally of the principal as his executor may choose.'' To Mollie Turney, the Bourbon county farm and $10,-000 in money. ''The said land and money to be held in the same manner as the devises made Mrs. Owings.'' To Ann Gaitskill, $5,000 paid him upon the land upon which she lives ''and $25,000.00 in money, to be held by her in the same manner as ''my other daughters.'' To Bettie Poyntz, $15,000 in money ''to be held'' in the same manner as the other devises. To Lillie Riggin, $5,000 in money ''to be held in the same manner as my other daughters.'' The ninth clause bequeaths ''all the balance'' of his estate of every kind and description, ''in this state and out of it,'' ''to his son, F. M. Ewing, with power'' ''to sell and convey any and all of'' his ''estate, personal and real, whenever and upon such terms'' as he shall deem fit. To make deeds of conveyance to his daughters for the several tracts of land devised to each with the limitations imposed by his will upon each, with directions ''that he act as trustee'' for each of his daughters of the land and money specifically devised to each with the request ''to be kind and liberal'' to them with funds held by him as trustee for each of them. The eleventh clause is in this language:

> ''To have the matter left not in doubt, the lands I have specifically devised to each of my said daughters is to be held by each of them for their separate and sole use, and at their death to descend to their children equally—and the money devised to each to be for their separate and sole use and at the death of each what remains to descend to their children equally and if any of them die leaving no children or descendants of their bodies the same to descend equally to the surviving children and their descendants.

> ''That by the consent of my executor any one of my daughters may sell the lands devised to them respectively, provided the money for which it is sold be reinvested in other real property, to be held in the same manner and for the same purposes.''

The property devised to Mrs. Elva E. Catlett is here involved. At the death of A. J. Ewing she had three children, Robert E. Catlett, Lucille Catlett, and Mrs. Agnes Winn. Mrs. Elva E. Catlett is yet living. Her daughter, Lucille, died many years ago, intestate.

and without issue. F. M. Ewing qualified as trustee and assumed charge of the $10,000 trust fund bequeathed to Mrs. Catlett, and later invested it, or a portion of it, in 154.3 acres of land adjoining the 164 referred to in clause 4 of the testator's will. The deed to the 154.3 acres vested title in F. M. Ewing as trustee, in conformity with the terms of the will. He died, and Pierce Winn was appointed and qualified as executor and assumed the duties of trustee.

Mrs. Elva Catlett owned 729 avrès of land in fee which she conveyed to Judge Goodpaster. By the same deed she conveyed him, without warranty, subject to her life estate, "all right, title and interest," if any, which she owned as an heir at law of her deceased daughter, Lucille, in both the 164 and the 154.3 acres. Robert E. Catlett, to secure notes which he executed and delivered to B. M. and L. A. Goodpaster, executed a mortgage on "all his right, title and interest in these lands."

The Goodpasters filed this action asserting their respective rights to the interest in this land of Robert E. Catlett and Elva E. Catlett. In their pleading they contended that Robert E. Catlett's interest covered by the mortgage, under Ewing's will devising to Elva E. Catlett the property, above described, is an undivided one-third indefeasible interest in the remainder, subject to Elva E. Catlett's life estate; and Agnes Winn owned a like undivided interest, subject to the same life estate, and that Lucille Catlett, at her death, owned an undivided one-third remainder interest which, upon her death, descended to her mother, Mrs. Elva E. Catlett, as her heir at law, subject to her own life estate.

Robert E. Catlett, Mrs. Winn, and Mrs. Elva E. Catlett contended in the trial court "that the true intent of the will, and the title truly taken thereunder by the devisees of A. J. Ewing as to said tract (and money) was (a) to the defendant, Elva E. Catlett, for life, (b) at her death to her children then living and the descendants of any children who might predecease her, the said Elva E. Catlett, and (c) that the said Lucille Catlett, having died before her said mother without issue, she had no interest therein to be inherited by her mother, the defendant, Elva E. Catlett; and that the defendants, Robert E. Catlett and Mrs. Agnes Winn, now own the remainder in said land, subject to each and/or both of them to be defeated by his or her

or their death before the death of the defendant, Mrs. Elva E. Catlett.''

The trial court accepted the Catletts' and Winn's construction of the will, and entered a decree accordingly.

The Goodpasters are here still insisting that their construction of the will is truly the correct one.

To sustain it, they cite to us Jones v. Thomasson, 159 Ky. 196, 166 S. W. 1001; Brown v. Blackwell, 178 Ky. 797, 200 S. W. 13; May v. Walter's Ex'rs, 97 S. W. 423, 30 Ky. Law Rep. 59; Turner v. Patterson, 5 Dana, 292, 296; Mercantile Bank v. Ballard's Assignee, 83 Ky. 481, 4 Am. St. Rep. 160; Cessna v. Cessna's Adm'r, 4 Bush, 516, 517, and 4 Kent's Commentaries, 206.

The parties agree that the correct rule of interpretation is, that ''the entire will must be taken into consideration; each part and clause thereof must be read in connection with the other parts. And all technical rules of construction must give way before the intention of the testator which governs whenever it can fairly be ascertained.'' Wickersham v. Wickersham, 174 Ky. 604, 192 S. W. 688, 690. And that ''the law favors the vesting of estates.'' Likewise, ''it favors the holding of an estate in remainder vested where it can be done in the light of the language creating it.'' Washer's Ex'r v. Washer's Ex'rs, 143 Ky. 645, 137 S. W. 227; Carroll v. Carroll's Ex'r, 248 Ky. 386, 58 S. W. (2d) 670.

It is also a familiar rule that where an estate is given in one part of the will it will not be cut down to a lesser by a subsequent provision, unless the language so doing is clear and unequivocal, and where there is doubt as to the character of the estate given that construction will be given it which passes the fee. Clay v. Chorn's Ex'r, 152 Ky. 271, 153 S. W. 425.

These prevailing rules, as well as those reiterated in the cases, supra, are not disputed. Their application to the will involved is the question now debated and disputed.

In the third paragraph of the Catletts' and Winn's answer, the age, condition, and situation of Mrs. Elva E. Catlett are stated, followed by the allegation that the trustee had advanced money out of his own funds against the trust fund for the support and maintenance

of Elva E. Catlett, and that he would be required to expend at least $1,200 to $1,500 a year of the trust fund to clothe, support, and provide her with the comforts of life, including physicians' and oculists' bills, and that the expectation of her life was 4.39 years as fixed by the mortality tables under the laws of the commonwealth, and that the trust fund invested in the 154.3 acres was the only fund available for her support and maintenance and its vendible value is not exceeding $30 per acre or for the farm, $4,600. And because of these facts, there will be no remainder at the death of Elva E. Catlett of the trust fund so invested in the 154.3 acres; but if there should remain at her death any portion of the trust fund invested in this tract, under Ewing's will it passes at the death of Elva E. Catlett, one-half to Agnes Winn, and the other half to Robert E. Catlett, subject to be defeated as to each or both of them if her or their death occurs before the death of Elva E. Catlett.

The import of the allegations of this paragraph of their answer is that the trust money was a fund for the support of Mrs. Catlett with which the trustee was directed to "be kind and liberal" to her; that the effect of Judge Ewing's will was, as to this fund, to devise over to somebody not the fund itself, but "what remains of it." The will "implies that the testator had in mind that the fund could be used up, could be disposed of, by and for that one for whom the trust fund was created." See Park v. McCombs, 146 Ky. 327, 142 S. W. 401; Davis v. Walker, 163 Ky. 442, 443, 173 S. W. 1141; Trustees Presbyterian Church v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237; Kincaid v. Bell, 205 Ky. 487, 266 S. W. 44.

As we view the case, it is entirely unnecessary to consider this question.

An examination and review of the cases cited and relied upon by the Goodpasters will disclose that the wills construed therein are entirely different in verbiage and meaning from Ewing's will. In those cases it should be observed that the wills therein construed make no provision for the disposition of the estate in the event of the death of the children of the devisees. They simply provided that upon the testator's death the remainder should vest eo instante in the children then living, because there was nothing in the will indicating a

different intention. The terms "vested remainder" and "contingent remainder" have been so often defined by this court, it is entirely unnecessary again to define them in this case.

"The following elementary rules for distinguishing a vested from a contingent remainder have been approved by this court [Mercantile Bank of New York v. Ballard's Assignee, 83 Ky. 481, 4 Am. St. Rep. 160]: 'The mere fact that an estate is to take effect and be enjoyed after the termination of an intervening estate will not prevent both estates from being vested at the same moment.' 'It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment, which marks the distinction between a vested and contingent interest.' 4 Kent's Commentaries, 206. 'The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent.' 2 Chitty's Blackstone, p. 169, note 10; Walters v. Crutcher, 15 B. Mon. [2] 10. * * * It is only where the limitation is to the heirs of a person in existence that the remainder is contingent upon the theory that 'nemo est hæres viventis.' " Weil v. King et al., 104 S. W. 380, 382, 31 Ky. Law Rep. 1010.

The Catletts and Mrs. Winn assert that the principles enunciated in Weil v. King are applicable to the present case. Observing the difference between a vested and contingent remainder, as therein stated, we will now review the Ewing will. It must be noted that the devise to Mrs. Owings was to "vest in her children and their descendants equally"; that of Jenela Gatewood is "to descend to her children equally"; Mrs. Elva Catlett's "to descend to her children equally"; Mrs. Turney's "to be held in the same manner as the devise made to Mrs. Owings"; Mrs. Gaitskill's "to be held by her in the same manner as my other daughters"; Bettie Poyntz' "to be held in the same manner as my other daughters". Whilst he used in the clause devising to Mrs. Owings the word "vest," in the devise to Mrs. Gatewood he used the word "descend," but in every clause the time fixed for the devise to "vest" or "descend" to the children of the devisee and their descendants was at the death of the devisee of the life state. The language of the several clauses, whether the prop-

erty thereby devised is specific real estate or money, or both, clearly establishes the testator's intention to devise to each of his daughters a life estate in the land or the money, or both, and at the death of each daughter the land, money, or both, devised to each of them, should "vest" in or "descend" at her death to the testator's surviving children, and their descendants, subject to be defeated by her and/or their death without issue before the death of the life tenant. Smith v. Thom, 158 Ky. 655, 166 S. W. 182, Ford v. Jones, 223 Ky. 327, 3 S. W. (2d) 781, and Roy v. West, Treasurer, 194 Ky. 96, 238 S. W. 167.

Plainly, on the death of the testator, a contingent remainder in one-third of the land and money devised to Elva E. Catlett for life vested in Lucille Catlett, and at her death, without issue, Elva E. Catlett surviving, a like remainder in this one-third vested in Robert E. Catlett and Mrs. Winn, one-half in each of them, contingent upon each and/or both of them, or the issue of each and/or both of them, surviving Elva E. Catlett.

This construction is fully sustained by the language of clause 11. The word "same," as it appears in clause 11, as used by the testator, includes land, money, or both, devised to his daughters in the preceding clauses. To construe it otherwise is to be forgetful of the language of the preceding clauses, and the equivalent of giving a meaning to clause 11 different from that which the language of the preceding clauses conveys to the ordinary mind, which manifestly was not the intention of the testator.

The judgment of the circuit court being in harmony with the views herein expressed, it is affirmed.