## Skiles et al. v. Bowling Green Trust Co. et al.

May 7, 1943.

Harlin & Harlin and James Russell Meany for appellant.

Rodes & Willock for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The seventh clause of the will of C. U. McElroy who died in June, 1928, is as follows:

"I give and devise to my wife, Litie T. McElroy, my farm in Warren County, Kentucky, known for more than an hundred years as 'Rich Pond Grove' situated about ten miles south of Bowling Green, and containing about six hundred acres, more or less, for and during her natural life and subject to my wife's life estate therein. I do hereby vest the title to said farm in the Bowling Green Trust Company of Bowling Green, Kentucky, in trust for the following purpose and uses. After the death of my wife said Trust Company will take charge of said farm and will sell same at such time and upon such terms as will yield the best price. After payment of

expenses of sale said Trust Company will divide the net proceeds into seven equal parts and will pay over 1/7 of said proceeds to the children of my uncle, J. W. Skiles; 1/7 to the children of my aunt, Martha J. Flinn; 1/7 to the children of my aunt, Lou Ann McElroy; 1/7 to the children of my aunt, Ellen McElroy; 1/7 to the children of my aunt, Mary Murrell; 1/7 to the child of my aunt, Bell C. Rowe; and 1/7 to the aforesaid four children of my brother, G. W. McElroy. Said farm originally belonged to my grandfather, W. H. Skiles, and became mine under the will of my uncle, H. H. Skiles. Now it is my purpose and desire that the proceeds of said farm shall go back to the lineal descendants of my grandfather, W. H. Skiles. All of his children are dead, but each of these named above left children, and it is my intention that the children of next of kin of each of said children of my grandfather shall have one-seventh of the proceeds of said farm to be divided between them. As my mother only left two children, to-wit: My brother, G. W. McElroy and myself and as he is dead leaving the above named four children they will take the one-seventh of the proceeds of said farm as the representatives of our mother just as the children or grandchildren of my said uncle and aunts above named will take 1/7 of the proceeds of said farm.

"I hereby vest in said Trust Company the power to sell and convey the title to said farm after the death of my wife, and will distribute the proceeds as above directed. But in the sale of said farm it shall be made upon the condition that the grave yard in the corner of the garden where my grandfather and grandmother and my own mother and others of my family are buried shall never be disturbed or desecrated or molested and when said Trust Company sells said farm it shall insert in its deed of conveyance a covenant that said grave yard shall never be disturbed or desecrated and such covenant 'shall run with the land'."

The sole question presented by this appeal is whether the takers under the clause quoted are those persons who composed the designated classes on the date of the testator's death or the individuals who composed

those classes on January 13, 1941, the date of the death of testator's widow.

Prior to Mrs. McElroy's death several of the numerous lineal descendants of W. H. Skiles, who were living at testator's death, had died leaving next of kin or spouses not within the class of lineal descendants. Some of the lineal descendants living at testator's death sold what they considered to be their vested interests in the property, and the present action was instituted by the executor to obtain a construction of the will and a determination of the rights of the respective claimants. The pertinent portions of the Chancellor's decree are as follows:

"1. One-seventh of the net proceeds of the sale of said farm shall go to the lineal descendants of J. W. Skiles' descendants per stirpes; one-seventh to the lineal descendants of Martha J. Flynn per stirpes; one-seventh to the lineal descendants of Lou Ann McElroy per stirpes; one-seventh to the lineal descendants of Mary Murrell per stirpes; one-seventh to the lineal descendants of Ellen McElroy per stirpes; one-seventh to the lineal descendants of Bell C. Rowe per stirpes; and one-seventh to the lineal descendants of G. W. McElroy per stirpes.

"2. The Court further adjudges that those persons entitled to share in such distribution are the lineal descendants of the seven persons named above who were living at the termination of the life estate of Litie T. McElroy on May 13, 1941.

"3. The Court is further of the opinion and so adjudges that by the terms of said will there was a conversion of said farm and land and that the distributees under said will must take and share in said estate as personal property; that as personalty, the distributive share of any distributee who may have died, passed as personalty, and its distribution shall be governed by the law of the State of such decedent's residence at the time of his death."

Only so much of the decree as determines the class of takers to consist of the lineal descendants living at the termination of the life estate is complained of, all parties having agreed that the terms of the will worked a conversion of the farm into personalty.

With the exception of the bequests contained in the fourth and fifth clauses to the four children of testator's deceased brother, G. W. McElroy, who compose the seventh group of takers under the seventh clause, the will contains little to indicate that the testator was concerned with the welfare of any individual who might take under the seventh clause, or that he was actuated by any motive other than that therein manifested, namely, in veneration of or gratitude to an ancestor, to restore, by bequeathing to those who might represent him, after testator and his wife had finished with it, a benefit received. We think that in composing the seventh clause the composer was group minded, to borrow a term from the American Law Institute's Re-statement of the Law of Property (Vol. 3 "Future Interests"), and that all factors considered, the case falls within the rule expressed in the concluding paragraph of our opinion in Ford v. Jones, 223 Ky. 327, 3 S. W. (2d) 781, 786, in the following language:

> "Where, under the provisions of a will, a gift to a class is postponed until after the termination of a preceding estate, as a rule, those members of the class, and those only, take who are in existence when such preceding estate terminates, and the time for distribution comes. The number of pieces into which the pie shall be cut and the parties to whom they shall be passed is determined by those of the class present when the time for cutting comes."

We are fully aware that the majority of the appellate courts of this country, influenced by the maxim that the law favors the vesting of estates at the earliest possible moment, have ruled that in the absence of a specifically manifested intention to the contrary, the time for the ascertainment of members of a class to whom an immediate gift is made is the date of the testator's death, not only where the gift is presently effective, both in right and possession, but also where the gift is subject to postponed distribution. However, an exception to even the majority rule is that where the creation of the right is postponed, as well as the possession "futurity being annexed, not alone to the time of distribution or enjoyment, but to the substance of the gift," the proper time for fixing the membership of the class "is the date when the gift vests in right or interest." Analogous to the exception is the "divide and pay over" rule,

which is, that if the only words of gift consist of a direction to pay or distribute, or to divide and pay over at a future date or event, the futurity is regarded as being annexed to the substance of the gift, and vesting is postponed until the time or event named. However, it is generally held that the "divide and pay over" rule is inapplicable where the postponement is for the convenience or benefit of the estate, or to let in some other interest rather than on account of the age, circumstances, or conditions of the beneficiary or beneficiaries. Corpus Juris 69, Sect. 1274, Page 252; Sect. 1287, Page 272; Sect. 1687, Page 605; Dougherty et al. v. Thompson et al., 167 N. Y. 472, 60 N. E. 760. To be consistent with the general rule of construction and its principal exceptions, we would be compelled to emphasize the fact that the title to the farm was vested by the seventh clause of the will, not in any specific beneficiary or beneficiaries but in a trustee, and that the language employed by the testator with reference to the distribution of the proceeds of sale to be made at the death of the life tenant brings the case within the "divide and pay over" rule; or, we could say that we preferred to follow the minority, sometimes spoken of as the Tennessee rule, which is so well expressed in the case of Ford v. Jones et al. supra, and seemingly has found support in other of our decisions. See Satterfield v. Mayes, 11 Humph., Tenn., 58; and, for a discussion of that case and other Tennessee authorities, Pugh v. Frierson, 6 Cir., 221 F. 513. Also, though not directly in point are the following: Willett's Adm'r v. Rutter's Adm'r, 84 Ky. 317, 1 S. W. 640; Dohn's Executor v. Dohn, 110 Ky. 884, 62 S. W. 1033, 64 S. W. 352; Ross v. Ware, 131 Ky. 828, 116 S. W. 241. We shall pursue neither of the suggested courses, but yield ourselves wholly to the guidance of what we conceive to be sign posts pointing to the testator's intention.

By the sixth clause of his will, the testator bequeathed his corporate holdings to his wife for life, and, at her death, to the four children of his brother, G. W. McElroy. The will provided, however:

"If at the death of my wife either of said four children should be dead leaving no child or children, then, the survivors shall have all of said stocks and if at the death of my wife either of said children should be dead leaving a child or children, said child

or children shall be entitled to their parents share of said stocks.''

If these favored four who had already by the fourth clause been given legacies, were bequeathed estates in the securities which would be defeated by their failure to survive testator's widow, what reason is there to believe that the testator intended to devise them vested remainders in the farm? And if he intended their interests in the securities and in the farm to be contingent upon their surviving his wife, can it be supposed that he intended the interests of his less favored and more distant relatives to vest irrespective of their survival? True it is that standing alone, that portion of the seventh clause which directs that one-seventh of the proceeds of the sale be paid ''to the aforesaid four children of my brother, G. W. McElroy,'' would seem to create vested remainders in them since they are identified as individuals; but, considered in connection with the scheme as a whole, and the other factors pertinent to the seventh clause which we have noted, the language referred to is without significance. That scheme apparently was that, with the exception of the comparatively small portions consumed by specific bequests and the portion devised outright to his widow, the estate, after testator and his wife could no longer enjoy it, should go to the lineal descendants of testator's grandfather rather than to strangers to his blood. The sixth clause clearly manifests that purpose, and to construe the seventh clause otherwise than as we have construed it, would violate it.

Furthermore, the testator was a successful and careful lawyer, and it is reasonable to suppose that if he had intended by the seventh clause to create remainders which would vest upon his death, he would have signified that fact by describing the lineal descendants of his grandfather whom he desired should share in the proceeds of the farm as those in being at the time of his death. He must have realized that the omission of any language importing an immediate gift to any one other than his wife and the vesting of title in a trustee with directions to sell the property at his wife's death and divide the proceeds among groups composed of unnamed individuals was at least indicative that ''futurity was of the substance of the gift.''

Appellants, who are the widows of group members

who died prior to the death of testator's widow, rely almost exclusively upon the provisions of KRS 394.410 (KS 2064) and KRS 394.400 (KS 4841) and the decisions of this court containing statements to the effect that the law favors the vesting of remainders. But the Statutes cited are wholly inapplicable since they relate to the effect of the failure of a member of a class or an individual devisee or legatee to survive the testator, and the rule referred to, like all others for construing wills, must yield to the universally recognized principle that the intention of the testator, if ascertainable from the language employed by him, prevails. Clark v. Payne (Self v. Payne), 288 Ky. 819, 157 S. W. (2d) 63.

Judgment affirmed.