## Beam et ux. v. Shirley.

Nov. 30, 1945.

Steinfeld & Steinfeld for appellants.

Kinsolving & Reasor for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In July, 1884, R. A. Shadbourne duly executed his will. In May, 1888, he died, followed by the probation of his will in the Nelson county court. Testator left surviving him his widow, three living children and the daughter of another child of a predeceased daughter, whose name is Catherine Strauss. Therefore, under the terms of testator's will there was created four divisions of his estate after the deaths of his widow, and his three living children.

Testator devised to his wife, in the event she survived him, an estate for life in all of his property burdened with the task of supporting and educating his two infant daughters, Matilda and Rebecca Shadbourne, and vested his widow with the power and authority to sell the devised real estate, or so much thereof as might be necessary for that purpose. He then added:

"The real estate of my children are to have the use of during their natural life, and at the death of either of them, then to their descendants according to the laws of descent. Should any of my children die before I do leaving descendants living at their death, then their descendants to take such part as their parent would have been entitled to if living."

He then appointed his wife executrix of his will.

This litigation involves only the ultimate fee title in the one-fourth part of testator's realty of which he died the owner, that his daughter, Bettie, was given a life estate following the termination of the widow's preceding life estate. Testator's daughter Bettie, married a man by the name of Allen, and two children were born of that marriage, the plaintiff and appellee, Bessie Shirley (she having married a man by the name of Shirley)

and Almanzor Allen, both of whom were living at the time of testator's death and also at the time of the death of his widow.

On June 13, 1935, appellee's brother, Almanzor Allen, conveyed to appellants, and defendants below, "all of his right, title and interest in and to the following tracts of land in Nelson County." Prior to that time—and following the death of testator's widow, by a court proceeding in Nelson County—the 648-acre farm owned by testator at his death was divided into four parts, each child and the one grandchild being allotted for their respective lives, after the death of testator's widow, a described and bounded one-fourth portion of the entire tract. The Commissioner in executing deeds pursuant to confirmation of the report in that case conveyed one parcel "to Bettie Allen for life, remainder to her descendants."

This action was filed by appellee and plaintiff below, Bessie Shirley, against appellants, and defendants below, seeking to cancel the deed that her brother executed to appellants in 1935, he having died in 1937, and that she was the only living descendant of her mother, Bettie Allen, at the time of the latter's death in 1944, and that under her grandfather's will she as descendant of one of his children became vested upon the death of her mother with the entire portion allotted to the latter in the division action, which was 113 acres. Appellants dispute that interpretation and claim that under the will of testator his grandson, their vendor in the attacked deed, became vested upon the testator's death with absolute title in remainder to a one-half interest allotted to his mother.

It is thus seen that the only question for determination is: Whether or not the grandchildren of testator take under his will a vested remainder interest at the time of his death? If the vesting is postponed by the language of testator's will until a later event, and there are other living members of the class designated as descendants of testator's children, then in that event defendants, and appellants, obtained by their deed from Almanzor Allen only such contingent remainder interest, as their vendor had which according to the following events never became absolute. Therefore, the interest that he conveyed to them was only a life estate which was

all that he could or did convey by the attacked deed. The trial court so construed the will and cancelled the deed that appellee's brother executed to appellants so far as it attempted to convey a fee simple title. From that judgment they prosecute this appeal.

It will be perceived that the word "descendants" of testator's children describes a class of ultimate takers in remainder and which we have held in numerous cases —some of which are cited post—has the effect of postponing the vesting of title of any member of the class, until the termination of the preceding particular estate, or estates, unless the particular language of the will or conveying instrument indicates a contrary intention. Two very late domestic cases so holding—and in which many prior ones are cited—are: Skiles v. Bowling Green Trust Co., 294 Ky. 211, 171 S. W. 2d 235, and Maingault's Adm'r et al. v. Carrithers et al., 295 Ky. 654, 175 S. W. 2d 129. That general rule of interpretation, where the instrument contains nothing to the contrary, is one of universal application and in accord with the plain intention of the executor of the instrument to be construed. A similar holding was made by this court in the earlier case of American Christian Mission Society v. Tate, 198 Ky. 621, 250 S. W. 483, 484, in which the various approved rules for the interpretation of conveyances of property (a will in that case) were set forth; but it was declared therein—and also in many other domestic cases —that all other rules surrender to the actual expressed intention of the maker of the document. In that opinion the task of courts in construing them was thus stated:

"If we but let the will speak for itself, instead of attempting to construe its plain, unambiguous terms according to a set of abstruse and arbitrary rules, there is not a chance to make a mistake; but if we apply (the common law) rules, we are led far afield. The modern tendency of courts everywhere is to discard, when it can be done, all technical rules of construction anciently employed in the interpretation of deeds and wills, and measure the document by plain common sense, giving it such meaning as its maker, a rational being, is bound to have intended by the words employed."

In the very recent case of Conlee v. Conlee, 300 Ky. 685, 190 S. W. 2d 43, there was presented to us the same character of task that this record presents, i. e., the in-

terpretation of certain language in the will involved. In the course of our opinion, we quoted quite extensively from the text in 28 R. C. L. under the heading of "Wills," section 165, wherein it is said: "Very few classes of questions are more frequent or more perplexing in the courts than the construction of wills." The text contains a statement of Lord Coke saying, "Wills and the construction of them do more perplex a man than any other learning." Also it is pointed out in that text that, "Two wills rarely use exactly the same language and every will is so much a thing of itself, and generally so unlike other wills that it must be considered by itself as containing its own law." In the following section of the work referred to a remark by Sir William Jones is inserted saying, "No will has a brother." In the Conlee opinion we construed the will involved as being governed by a statement of the testatrix therein, whereby she explained in unambiguous language what she meant, but for which, perhaps, a different interpretation would have been given to her will.

We agree with Sir William Jones that no will has a brother, but the will involved in the case of Fischer v. Porter, 263 Ky. 372, 92 S. W. 2d 368, while it might not be a full brother to the one here involved, is at least a half-brother. The facts are almost, if not completely, identical. The language of the will and its temporary and ultimate disposition of testatrix's property closely, if not exactly, parallels the language of the instant will. We held therein that the remaindermen under the will there involved took no vested, but only a contingent interest in remainder in the property given to each of them, they being members of a class to all whom the ultimate title was devised jointly. That, as we have seen, is the exact question in this case. We deem it unnecessary to elaborate upon the facts, or to insert excerpts from the opinions referred to, since such information may be readily obtained by the reader consulting those opinions. We are not disposed to question their correctness, since they are based upon the undoubted and clearly expressed intention of the maker of the will under consideration in each of the cases, and which is, after all, the controlling rule by which courts are guided in the interpretation of such instruments.

Wherefore, for the reasons stated, the judgment is affirmed.