# French v. Peirce.

January 30, 1948.

Chester D. Adams, Judge.

Wm. H. Smith and Taylor G. Smith for appellant.

L. O. Thompson, and Mooney, Crosby & Clay for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER— Affirming.

This is a suit based on a contract for the sale of land. It was filed by appellee, the vendor, for a declaration of rights and for specific performance. The facts are not in dispute, and the whole controversy is whether or not appellee could convey a good and merchantable title to the property.

The Chancellor entered judgment on the pleadings in appellee's favor, and decreed that appellant should accept the tendered deed, and should pay appellee the agreed purchase price. Appellant objects to the judgment in its entirety, and appellee by cross-appeal objects to the judgment in so far as it fails to allow him interest at the legal rate on the amount adjudged.

Appellee's title is founded on two deeds from all of

the nine children of one Martha Scott, who died testate in 1925. The tract of land in controversy was referred to in her will as the "home place." The significant portion of her will provides in part (our italics):

"Item 4. I bequeath and devise all of my household furniture and *home place* on the Maysville Pike, about eight miles from Lexington, Kentucky, to my son, Ben T. Scott, Jr., *for life, and at his death* I bequeath and devise said household furniture and said home place *to his brothers and sisters then living,* absolutely and in fee simple."

The life tenant, Ben T. Scott, Jr., and all of his brothers and sisters joined in conveying their entire interests in the "home place" to appellee after their mother's death.

It is appellant's contention that by virtue of Item 4 of the will above quoted, son Ben had only a life estate, his brothers and sisters each had only a contingent remainder, and together they could not convey a fee-simple title. The argument is that together they did not have the entire estate because in the event the brothers and sisters died before the life tenant they would have no estate whatsoever, and some other parties not now determinable would own the ultimate fee.

The question is raised as to whether or not the remainder interests were vested, or contingent. We believe that question can be quickly disposed of. The phrase "then living" definitely creates a class of persons, the constituents of which cannot be ascertained until the death of the life tenant. In the event of the death of any brother or sister prior to the life tenant's death, his or her prospective interest in the estate would be extinguished. It is, therefore, clear that the remaindermen do not have vested estates at any time prior to the death of the life tenant.

This particular question has been passed on a number of times by this Court. In Ford v. Jones et al., 223 Ky. 327, at page 339, 3 S. W. 2d 781, 786, we stated the general rule as follows:

"Where, under the provisions of a will, a gift to a class is postponed until after the termination of a preceding estate, as a rule, those members of the class, and

those only, take who are in existence when such preceding estate terminates, and the time for distribution comes. The number of pieces into which the pie shall be cut and the parties to whom they shall be passed is determined by those of the class present when the time for cutting comes."

In the case of Beam et ux. v. Shirley, 301 Ky. 326, 191 S. W. 2d 248, property was devised to the testator's children for life with the remainder to their "descendants." It was held that the vesting of the remainder was postponed until the termination of the preceding estate. See also Fischer v. Porter et al., 263 Ky. 372, 92 S. W. 2d 368, and Maingault's Adm'r et al. v. Carrithers et al., 295 Ky. 654, 175 S. W. 2d 129.

While, of course, the law favors the vesting of estates, this Court has never used that rule to over-ride the obvious intention of the testator. In this case the mother devised a remainder only to those children who were *then living* at the time of the death of the life tenant. They, therefore, did not have a vested estate in the property, but each had a contingent remainder, dependent upon his surviving the life tenant.

They could, of course, convey to appellant these contingent remainder interests, and if any brothers or sisters survived the life tenant, these interests would ripen into a fee. In the event of the death of all of them however, prior to the death of the life tenant, appellant would have no title by virtue of his ownership of the remainders created by Item 4.

It is thus apparent that a reversionary interest exists somewhere pending the death of the life tenant. If the brothers and sisters named in the will are vested with this reversionary interest, their conveyance to appellant, together with the conveyance of the life estate, vested him with complete fee-simple title.

On this particular question appellant's contention seems to be that there may be heirs not now known or in existence who might ultimately be vested with the reversion. There are two cases decided in this jurisdiction which are determinative of the question. In Nuckols et al. v. Davis et al., 188 Ky. 215, 221 S. W. 507, property had been conveyed by one Davis to his wife Anna

for life "with remainder to his heirs." Thereafter the grantor died intestate and his widow, with the heirs living at the date of his death, attempted to convey the property. We held that conveyance passed a fee simple, even though the remaindermen could not be determined until the death of the life tenant.

In Walker et al. v. Irvine's Executor, 225 Ky. 699, 9 S. W. 2d 1020, 1025, property was devised by will to the testator's daughter for life, and at her death was to be divided amongst certain "then living children." We held that contingent remainders were created which would not vest until the death of the life tenant. We stated 225 Ky. 699, at page 710, 9 S. W. 2d 1020, 1025:

"Therefore, until the contingency happened which would turn the contingent remainder created by the will of David Irvine we have been discussing into a vested one, there was a reversion in David Irvine which either descended to his heirs, if he died intestate as to it, or passed to his residuary devisees, if the residuary clause of his will covered it."

We concluded that the reversion passed to the testator's children either by descent or under the residuary clause in the will.

In view of the principle applied in the above two cases, which we consider sound, it is evident that the reversionary estate of the testatrix (being the ultimate fee in the property devised in the event all of the contingent remaindermen predeceased the life tenant) passed immediately on her death to either her heirs then in existence, if she died intestate as to this interest, or to the residuary devisees under the will. As in the Walker case last discussed, it is immaterial in this case how the reversion passed. All of the children except the life tenant (who conveyed his interest in the property to appellee) were specifically named as residuary devisees. Therefore, as either heirs or devisees they conveyed to appellee the reversion.

We thus have a situation where the life tenant and contingent remaindermen have conveyed their interests, and the heirs and residuary devisees have conveyed the reversion. To the appellee, therefore, has been transferred every possible estate in this property which goes

to make up the fee simple. The Chancellor correctly adjudged that appellee was the fee-simple owner with full power and right to convey it to appellant, and properly decreed specific performance.

The only remaining question is whether or not the Court erred in failing to allow appellee interest at the legal rate on $6,300 (the amount due under the contract) from April 15, 1947, the date the contract was to be performed, until paid. Since appellee apparently has continued in possession of the property, the Chancellor did not abuse his discretion in failing to allow interest on the amount due.

For the reasons herein stated, the judgment is affirmed on both the original and cross-appeals.