**Elmer WHITE, C. C. White, Iva B. White, Evelyn White Broaddus, Mary W. Black, and Bernice T. White, Appellants,**

v.

**Rodney WHITE, Individually and as Administrator with the Will Annexed of the Estate of Ida White, Deceased, Mollie White, Betty White, Margaret White, Nell Kash, and Tennie Davis, Appellees.**

Court of Appeals of Kentucky.

March 8, 1963.

H. M. Shumate, Shumate & Shumate, Irvine, for appellants.

J. M. Wolfinbarger, Irvine, for appellees.

STEWART, Chief Justice.

Ida White died testate and without issue a resident of Irvine, Estill County, on July 10, 1960, survived by two brothers and four sisters, and also by a nephew and two nieces, the children of a brother who predeceased her. She disposed of her property by a holographic will, and the portion which is before us for construction reads:

"My real estate and money left and oil interest left to Rodney White Stanton, Ky. only his lifetime, after his death what is left to come back to the immediate White heirs that are living."

The trial judge was of the opinion that the property devised and bequeathed to Rodney White under this clause could be used by him and his family, consisting of himself and his wife, for the customary expenses of living, including doctors' and hospital bills or other emergency expendi-

tures, in accordance with the station in life maintained by Rodney White. The trial judge declined, when requested by appellants, to require Rodney White to give bond to have the principal amount forthcoming at his death. The trial judge also adjudged that, at the death of the latter, the residue or "what is left" should revert to the brothers and sisters of Rodney White then living, they being the "immediate White heirs" entitled to share in what remained over.

This appeal is from these rulings. Appellants claim: (1) Rodney White has no right to encroach upon the corpus; (2) he should be required to execute bond so as to insure delivery of the corpus intact to those entitled to it after his death; and (3) upon the death of Rodney White, the corpus of the estate should be ordered distributed to the heirs of Ida White pursuant to the statutes of descent and distribution.

In the case of Collings v. Collings' Ex'rs, Ky., 260 S.W.2d 935, this Court had under consideration the language, "Any part of my estate *remaining undisposed of* at the time of the death of my said wife, I will and bequeath to my cousin," etc., and held that the words "remaining undisposed of" bestowed upon the widow, who was given his estate for life, the unrestricted right to encroach upon the estate in a reasonable manner. The opinion in interpreting the phrase said: " * * * it was the testator's intention that his widow should possess all right as to the use and enjoyment of the devised estate during her natural life; nevertheless, she may not willfully waste it, nor give it away, nor dispose of it by will."

The expression, "what is left," imports the same meaning as "remaining undisposed of." Therefore, if the latter words in the Collings case implied power upon the part of the life tenant to encroach upon the principal, we believe the phrase,

"what is left," carries like effect as to one similarly situated in the case at bar.

■ A careful reading of the will of Ida White leads to the conclusion that she intended Rodney White to have a free hand in the use and management of the property she gave him. It is our view she did not wish him to be hindered by court proceedings or by any type of supervision or by any kind of restraint. It seems clear that the language, "what is left," would have no meaning if the words did not imply the corpus could be consumed. The trial judge in our opinon properly refused to require the bond demanded by appellants.

■ A final contention is that the nephew and two nieces of the deceased brother, or any other relatives of a like class, should be considered as "immediate White heirs" upon the death of Rodney White. The trial judge decreed that such persons were not *immediate heirs*. We have found no case in Kentucky which discusses the difference between heirs who are immediate and heirs who are not. However, in the case of Furenes v. Mickelson, 86 Iowa 508, 53 N.W. 416, the following distinction is set forth:

" ' * * * with reference to the line of pedigree or consanguinity, a descent is often said to be immediate where the ancestor from whom the party derives his blood is immediate, and without any intervening link or degree, and mediate when the kindred is derived from him *mediante altero,* another ancestor intervening between them. Thus a descent in lineals from father to son is, in this sense, immediate, but a descent from grandfather to grandson, (the father being dead,) or from uncle to nephew, (the brother being dead,) is deemed mediate.' "

Applying the test laid down in the Furenes case to the phraseology under consideration, it appears nieces and nephews should

not be deemed immediate heirs but only brothers and sisters should be so considered. It follows that the trial judge correctly held that only the brothers and sisters of Ida White would take the property left under the above clause of her will at the death of Rodney White.

Wherefore, the judgment is affirmed.