**Christine GRAHAM et al., Appellants,**

**v.**

**William O. JONES et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 22, 1965.

"Item III. After the death of my said wife the property above described will descend to my nearest blood relatives under the laws of the State of Kentucky unless I shall hereafter make a different devise."

When the testator died he was survived by his widow, Vola Jones, the life tenant mentioned in Item II of his will, and by three brothers, two sisters and the children of two deceased sisters. The testator left no surviving issue or surviving parent.

James and Robert Jones (two of testator's brothers) and Ida Wood Miracle (testator's sister), who were living when the testator died, had died when Vola Jones, the life tenant, died in 1962. Thus, when the life tenant died, William Jones and Zelma Monhollen, appellees, were the only surviving brother and sister of testator.

William Jones and Zelma Monhollen (appellees), as the surviving brother and sister of testator, instituted this action against the children of the testator's brothers (James and Robert Jones) and testator's sister (Ida Wood Miracle) in which they asserted that they, as the sole surviving brother and sister of the testator, became the joint owners of the entire property, to the exclusion of the testator's nieces (appellants).

The trial court was of the opinion that the surviving brother and sister, appellees, take the entire estate to the exclusion of children of the testator's brothers and sisters who had predeceased the life tenant, Vola Jones. He predicated this decision upon his conclusion that "nearest blood relatives" indicates an intention to have the property pass to persons most directly proximate in degree of relationship. The trial court relied on White v. White, Ky., 365 S.W.2d 732, as the basis for his judgment.

We think the White case, just cited, is clearly distinguishable from the one now being considered. It is true that in the White case we said that "immediate White

---

Allen & Clontz, Mt. Vernon, Hamm, Taylor & Milby, London, for appellants.

Sutton & Martin, Corbin, for appellees.

DAVIS, Commissioner.

This appeal presents a question of construction of the will of John J. Jones, who died in 1941. The pertinent provisions of his will before us recite:

"Item II. I give, bequeath and devise to my wife, Vola Jones, for her natural life the lot [which is then described] * * *

heirs that are living" entitled the surviving brothers of the testatrix to take to the exclusion of nieces and nephews who were the children of other brothers of testatrix. The White will would have been comparable to the will in the present case if it had included the modifying words "under the laws of the State of Kentucky"—and if it had not contained the expression "that are living." But had the will in the White case contained such language, the result would have been different.

There are certain fundamental precepts which bear upon the construction of wills. The litigants recognize these, but insist that different results flow from their application.

■ It is apodictic that the intention of the testator as gathered from the four corners of the instrument must prevail unless it is contrary to some positive provision of law or public policy. See 19 Ky.Dig. 1, Wills, 

■ It is well settled that the law favors that construction which results in the early vesting of remainder interests. However, the rule favoring the early vesting will not be used to override the obvious intention of the testator. French v. Peirce, 306 Ky. 450, 208 S.W.2d 327; Boggs v. Baxter, Ky., 261 S.W.2d 684.

The trial court concluded that the words "after the death of my said wife the property will descend * * *" evince the testator's intention to postpone the vesting of the remainder until the time of death of the life tenant. We believe this is an erroneous construction. In 5 Page on Wills, 3d Ed., § 43.5, pp. 349–350, it is said:

"Equitable estates, in which only the enjoyment thereof is postponed until the determination of the life estate, vest upon testator's death in the same manner as legal estates. If the gift over, whether of legal or equitable nature, is 'after,' 'at,' 'upon,' or 'from and after,' the death of the life tenant, it is held that the gift over vests at the death of testator, as the word 'after' refers to possession and not to vesting."

See also American Law of Property, Vol. V, § 21.9, p. 141, in which the import of such language is evaluated:

"In this situation the words 'on the death' or 'at the death' or 'after the death' of the life tenant merely refer to the termination of the preceding interest in a normal manner, and do not indicate that the remainderman is required to survive the life tenant, or that the remainderman is required to wait until the life tenant in fact dies if the life estate ends before his death, in order to be entitled to possession of the property. It is characteristic of remainders that they wait for the termination of the preceding estate, and consequently, the fact that such characteristic is stated in language which describes the normal ending of the prior estate is no basis for regarding the remainder as being subject to a condition."

■ The appellees rely upon American Christian Mission Society v. Tate, 198 Ky. 621, 250 S.W. 483; Beam v. Shirley, 301 Ky. 326, 191 S.W.2d 248; Fischer v. Porter, 263 Ky. 372, 92 S.W.2d 368; Ford v. Jones, 223 Ky. 327, 3 S.W.2d 781; French v. Peirce, 306 Ky. 450, 208 S.W.2d 327; Goodpaster v. Catlett, 260 Ky. 826, 86 S.W.2d 1028; Maingault's Adm'r v. Carrithers, 295 Ky. 654, 175 S.W.2d 129, and Skiles v. Bowling Green Trust Co., 294 Ky. 211, 171 S.W.2d 235. It would extend this opinion beyond tolerable limits to undertake a detailed analysis of each of the cited cases. However, a careful examination of them reflects that in each there appears a substantial basis for holding that the intention of the testator was so expressed as to indicate that the time of the vesting of the remainder was fixed as of the date of death of the life tenant rather

than as of the death of the testator. For example, in Ford v. Jones, 223 Ky. 327, 3 S.W.2d 781, the will expressly provided for ultimate distribution among "all my surviving children, if any, or their natural heirs." Whereas, in Maingault's Adm'r v. Carrithers, 295 Ky. 654, 175 S.W.2d 129, the expression "if living" was used as a predicate to the right of remaindermen to take at the conclusion of the life estate. Some such distinction is observable in each of the cases above cited. Each of them recognizes the general rule to be that the time of vesting is normally as of the date of the testator's death unless the intention of the testator to the contrary is clearly expressed. In the present case we are unable to discern any such clearly expressed intention of the testator as to take the case out of the generally accepted principle that the time of vesting of remainder interests is at the date of the testator's death. See Gatewood v. Pickett, 314 Ky. 125, 234 S.W. 2d 489; Montgomery's Ex'r v. Northcutt, 292 Ky. 622, 167 S.W.2d 317; Fugazzi v. Fugazzi's Com., 275 Ky. 62, 120 S.W.2d 779; Stallard v. Lambert, 236 Ky. 651, 33 S.W.2d 682; Sherley v. Sherley, 192 Ky. 122, 232 S.W. 53 and cases therein cited and discussed as to the prevailing general rule that the date of the testator's death is generally held to be the date of vesting of a remainder interest.

We think the testator's use of the words "descend to my nearest blood relatives under the laws of the State of Kentucky" clearly evinces his intention to adopt the Kentucky law of descent and distribution (KRS 391.010) as the basis for distribution of the remainder interest. KRS 391.010(3) provides for intestate succession to brothers and sisters and their descendants (absent surviving issue and parents). This long established statutory provision provides a *per stirpes* rather than *per capita* distribution. Thus, the expression "nearest blood relatives" when measured by the modifying phrase "under the laws of the State of Kentucky" must be held to relate to proportionate shares (i. e. *per stirpes,* not *per capita*) rather than "immediate" or "mediate" relatives as considered in White v. White, Ky., 365 S.W.2d 732.

Accordingly, it is our conclusion that the heirs at law of John J. Jones who survived him took a vested remainder in his estate on a *per stirpes* basis, and that such interest vested as of the date of the death of John J. Jones.

It is appropriate to observe that by amended complaint it was asserted that Robert Oldham, Catherine Oldham, Synthia Langford and her husband, Steve Langford, and Gertrude Mulry "are relatives of John J. Jones, deceased." The nature of their relationship is not explained, although we assume they comprise all or part of the children of the testator's two sisters who had predeceased the testator. These persons were proceeded against by warning order. None of them appeared in the circuit court, nor are they parties to this appeal. However, *if* the above named persons are indeed heirs at law of John J. Jones, the result of this opinion shall inure to their benefit as their interests may appear, and the judgment of the lower court shall so provide. We think it may not be doubted that all of the heirs at law of John J. Jones derive their rights under his will as a matter of privity, and that their respective rights stand or fall on the same basis. Thus, whether we regard these nonresidents (if heirs of John J. Jones) as indispensable parties to this appeal, and here by virtual representation, or we consider their rights as so interwoven and dependent as to be inseparable from the other parties to this appeal, the result is the same. Cf. 5B C.J.S. Appeal and Error § 1952; 78 A. L.R. 938, et seq.; Hamner v. Boreing, 191 Ky. 833, 231 S.W. 497; Tackett v. Green, 187 Ky. 49, 218 S.W. 468.

The judgment is reversed for entry of judgment consistent with this opinion.