**Ruth Ann AUFENKAMP, Individually, and for Residuary Legatees Under the Will of Frank T. Aufenkamp, Appellants,**

v.

**FIRST KENTUCKY TRUST COMPANY OF LOUISVILLE, Kentucky, and the Unknown Heirs of Charles F. Aufenkamp, Appellees.**

Court of Appeals of Kentucky.

Jan. 31, 1986.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court April 2, 1986.

John J. Ford, Louisville, for appellants.

Marshall B. Woodson, Jr., Louisville, for appellees.

Before HOWARD, LESTER and MILLER, JJ.

HOWARD, Judge.

The appellants, Ruth Ann Aufenkamp, individually, and for the residuary legatees under the will of Frank T. Aufenkamp, appeal the grant of a summary judgment in favor of the First Kentucky Trust Company of Louisville, and the unknown heirs of Charles F. Aufenkamp.

Frank Aufenkamp died testate on August 23, 1943. Under Frank's will, the First Kentucky Trust Company, one of the appellees, was appointed trustee of his residuary estate. This trust was established for the benefit of his wife, Lida. Frank's will also contains the following provision:

> At the death of my wife, Lida Aufenkamp, the balance then in the trust estate shall be divided in equal shares per stirpes between my brothers. If my said wife shall predecease me, my entire net

estate shall be divided in equal shares between my brothers.

Although Frank had two brothers, George and Charles J. Aufenkamp, his parents were deceased at the time his will was executed. Frank was survived by his wife, Lida, and the two brothers; he and Lida had no children. Charles also died in 1943, and was survived by his daughter, Kathryn Shearer. Frank's brother, George, had two sons, George, Jr. and Frank T. (Tim) Aufenkamp. George passed away in 1952, while George, Jr. died without issue in 1959.

In his will, Tim, who died in 1976, granted his wife, appellant Ruth Ann Aufenkamp, a life interest in his estate with the residue going to certain charities. Lida did not pass away until 1984. On learning of Lida's death, Ruth made a claim for one-half of the trust assets held by First Kentucky Trust Company. The basis for Ruth's demand was that George's share vested on Frank's death and therefore fell to George's son, Tim, on George's death. That interest in Frank's estate then was due her through Tim's will.

The appellees maintain that George's remainder interest did not vest on Frank's death but was contingent on his survival of the life tenancy. Because neither George nor Charles survived Lida, the appellees contend these legacies lapsed and the trust assets became intestate property. Under the intestate laws, the property should then fall to Kathryn Shearer, Frank's only surviving heir.

The appellants brought a declaratory judgment action in the Jefferson Circuit Court. Both parties moved for summary judgment and the trial court, agreeing with the appellees' reasoning, ruled in their favor.

The general rule for interpreting a will is that "the intention of the testator as gathered from the four corners of the instrument must prevail unless it is contrary to some positive provision of law or public policy." *Graham v. Jones,* Ky., 386 S.W.2d 271, 273 (1965). The language employed in Frank's will regarding the moment of vesting of the remainder to his brothers does not clearly show his intention. When the testator's intentions are not obvious, the courts must resort to certain rules of construction.

In *Graham, supra,* the Court stated: "It is well settled that law favors that construction which results in the early vesting of remainder interests." *See Gatewood v. Pickett,* 314 Ky. 125, 234 S.W.2d 489 (1950). In *Fugazzi v. Fugazzi's Committee,* 275 Ky. 62, 120 S.W.2d 779 (1938), the Court was faced with the effect of the words "upon the death of my wife" on the vesting of a remainder interest under a will. The Court stated:

> This expression is equivalent to 'when my wife dies' or 'at the death of my wife', and such similar expressions, which in a will in the absence of anything showing a contrary intention, have been construed as merely deferring the time for enjoyment in possession of the property composing the remainder, and not to defer the vesting of the remainder or creating a condition which, upon its happening, would divest the remaindermen of title.

*Id.,* 120 S.W.2d at 782. *See Graham, supra.* Thus, unless some contrary interest is shown, it is clear that the remainder interest which is to follow a life estate in a provision using language such as "at" or "after" the death of the life tenant, "vests at the death of the testator, as the word 'after' refers to possession not to vesting." *Graham, supra,* at 273.

The appellees cite a number of cases in which language in a will similar to that used in the instant case has been construed to mean that the remainder interest did not vest until the life tenant passed away. We believe these cases are inapplicable to the case at bar.

In *Ford v. Jones,* 223 Ky. 327, 3 S.W.2d 781 (1927), the will provision stated that the

remainder of the testator's estate would first go jointly to his two sons, then to the surviving son on the other's death and then to "all my (the testator's) surviving children, if any, or their natural heirs." The Court held that the remainder interest did not vest until the death of the life tenant. Several authorities were cited which held that when the period of enjoyment of an estate is delayed by a life estate or other interest and the remainder is given to the survivors of a class, the "survivors" means those class members surviving the termination of the previous estate. The Court also noted that one could not know who was a member of the benefited class until the two life tenants died. Thus, the remainder was contingent and did not vest until the termination of the life estates.

In *Skiles v. Bowling Green Trust Co.*, 294 Ky. 211, 171 S.W.2d 235 (1943), the testator gave his wife in trust a life estate in his farm and "after the death" of his wife, the farm would be sold. After the expenses were paid, the trust company was to divide the proceeds and pay equal portions to certain individuals. The Court acknowledged the rule that in such cases the members of a class of takers are generally determined at the testator's death, but the gift in question fit the exception providing that a testator may express an intention concerning the time the remainder vests, contrary to the general rule. The Court determined, on examining the will as a whole, that to construe the gift as vested at the time of the testator's death would do violence to other provisions of the will. Therefore, the remainder interests were contingent and did not vest until the life estate terminated.

Similarly, in *Maingault's Adm'r. v. Carrithers*, 295 Ky. 654, 175 S.W.2d 129 (1943), the Court found that the language used by the testator evidenced a clear intention that the remainder was not to vest until the death of the life tenant. The will provided that the testator's wife was to receive a life estate and following her death, the testa-

tor's brothers and sisters, or the children of any deceased brother or sister are to take the share their parents would have taken "if living." Because of the phrase "if living," the Court reasoned that the testator devised his estate "to a class on condition that only those members of the class take who are living when the preceding life estate terminated." *Id.*, 175 S.W.2d at 130.

A similar holding was pronounced by the Court in *Altman v. Rider*, Ky., 291 S.W.2d 577 (1956). The Court found the language of the will and the circumstances surrounding its making indicated that an implied condition of survivorship was intended by the testator. Therefore, only the persons bequeathed money who were alive at the termination of the life estate were to take under the will.

In the instant case, there is no language of survivorship attached to the provision devising the remainder to Frank's brothers at the death of Lida. Further, there is no language in the devise or elsewhere in Frank's will that would indicate that Frank did not intend for the remainder to vest in his brothers at his death. Thus, under the rule stated in *Graham, supra,* the remainder was vested at the time of Frank's death and only the enjoyment of the property was postponed until Lida's death. Therefore, Ruth is entitled to George's share because it passed to her through Tim's will.

The judgment of the Jefferson Circuit Court is reversed and remanded for proceedings consistent with this opinion.

All concur.