## Sledd, et al. v. Rickman, et al.

(Decided November 18, 1921.)

### Appeal from Marshall Circuit Court.

1. **Wills—Construction.**—A devise by a testator of "my entire estate, both real and personal," to his wife for life, and a further devise to his daughter "at the termination of life with my wife that my daughter, Narcissus J. McGregor, if she be living, to have one hundred acres of my lands" is a devise to Narcissus only in the event she is living at the death of her mother, and she took under such devise no such vested right during the life of her mother as she might dispose of by will or deed; she took only in the contingency that she survived her mother.

2. **Wills—Omissions—Presumptions.**—The presumption that a testator intends to dispose of all of his property cannot supply an omission by the testator to devise a part of his estate or an interest in a part of it.

3.   Wills—Construction.—The language "I desire at the termination
of life with my wife" does not refer to the testator's death but to
the death of his wife, to whom he had devised the life estate.

W. L. PRINCE, W. M. REEDER and T. B. McGREGOR for appellants.

MOCQUOT, BERRY & REED for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

In March, 1899, W. C. McGregor made and published his last will and testament, which was probated after his death in 1904.

Its provisions, so far as they affect this controversy, are as follows:

"To my beloved wife, Serrildah A. McGregor, after paying all just demands, my entire estate, both real and personal, for her use and benefit during her natural life, provided that it shall be a duty devolved upon my wife, the said Serrildah A. McGregor, to care and provide for any of my children that remains in single life and with her. I desire at the termination of life with my wife, that my daughter, Narcissus J. McGregor, if she be living, to have one hundred acres of my lands and it to include the houses and other buildings at which I now live, and including all the land east of the house, and to W. N. McGregor, my son, I desire for him to have the remainder of the tract of land on which he now lives south of him known as the woods land, containing 31 acres and to Serrildah L. Sledd, my daughter, I desire her to have the twenty acres of land to include her buildings where she now resides. Also one hundred and fifty dollars which I have advanced to Serrildah L. Sledd, my daughter, for the payment on 20 acres of land deeded by J. L. Griffith, to her and W. E. Sledd, and to Sarah Elizabeth Rickman, my daughter, who is now dead, but having three children now living, I desire for them to have the south half of the Milliken tract of land deeded to me by Minnie L. Milliken, and to Dyson Adeline Rickman, my daughter, I desire for her to have the other half of said tract of land above mentioned."

His wife and four children survived him, together with the children of his deceased daughter, Sarah Rickman, as indicated in the will.

The daughter, Narcissus, died in 1908, but the widow lived in 1910. Narcissus, before her death, made and published her will, wherein she undertook to devise to her two nephews, U. H. Sledd and T. B. McGregor, the one hundred acres of land the title to which she thought she took under her father's will. ·

The only question is did she take such a vested interest under her father's will during the lifetime of her mother as she might dispose of by will or deed, or did she take only such an interest as was contingent upon her outliving her mother?

Narcissus was, at the date of her father's will, forty-eight years of age and unmarried, and she was, at the date of his death, fifty-three years of age and still unmarried. She, at both dates, lived at home with her mother and father, being the only unmarried child and the only one so living with them. It will be observed that the testator, after giving his entire estate for life to his wife, imposed upon her the duty of caring for and providing for any of his children that might remain single and with her in the home and it is perfectly apparent that this provision was made solely for the benefit of Narcissus.

It must be assumed in the interpretation of this instrument that the testator knew that his daughter Narcissus had, at the time the instrument was executed and at the date of his death, reached the age where in all human probability she could never bear children, and in the light of this and the further fact that he did not limit or restrict the remainder estate which he gave to any of his other children or grandchildren · so as that the same should not take effect until the death of the widow, seems to be very persuasive when taken in connection with the language of the will that the devise to the daughter, Narcissus, was only intended to be effective in the event of the contingency that she outlived her mother. In fact, the language of the devise standing by itself is susceptible of no other interpretation; it is "I desire at the termination of life with my wife that my daughter, Narcissus J. McGregor, if she be living," take title to the one hundred acres. It is perfectly clear that the testator in the use of this language had in mind not only the fact that his daughter would never bear children, but had in contemplation also the contingency that she might not outlive her mother. The language plainly limits the vesting of the estate in Narcissus to the contingency that she outlive her mother, and the conclusion that such was

the purpose of the testator is not weakened, but on the contrary is enormously strengthened, by the extraneous facts and circumstances which we have detailed.

In holding this to be a contingent remainder we are not unmindful of the rule so often recognized that it is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment which marks the distinction between a vested and a contingent remainder. Nor have we overlooked the modern tendency to hold an estate in remainder to be a vested one where it can be done without violence to the language used.

But here the right of Narcissus to take is made to depend wholly upon whether she be living at the death of her mother, and the devise to her is wholly dependent upon that contingency. The devise is wholly, by the express terms of the instrument, dependent upon the happening of an uncertain event in the future, to-wit, the survival by Narcissus of her mother. The language is: "I desire at the termination of life with my wife that my daughter, Narcissus J. McGregor, if she be living, to have one hundred acres of my lands;" to hold that devise to be a vested one during the life of her mother would be doing extreme violence to the plain language used, and would be, in addition, as we have heretofore pointed out, doing violence to what must have been in the mind of the testator by reason of the extraneous facts referred to.

But it is said that the presumption is that a testator intends to dispose of all of his property and to construe this devise to Narcissus to be a contingent one leaves him intestate as to the remainder interest in the one hundred acres, the daughter having died before the mother. But as said in the case of Walters v. Neafus, 136 Ky. 756.

"The presumption against intestacy as to any part of the estate vanishes when the fact becomes apparent that some part of it was not disposed of. In no event can that presumption supply an omission to devise a parcel of the estate."

Also see Shields v. Shields, 185 Ky. 249. It results from what we have said that as the daughter Narcissus only took a contingent remainder and died during the lifetime of her mother that the testator died intestate as to the remainder interest in the one hundred acres.

But it is contended by appellants that the use by the testator of the language "I desire at the termination of life with my wife" intended to vest the one hundred acres in Narcissus upon his (testator's) death and not at the

death of the life tenant. But this contention wholly overlooks the fact that testator had previously in his will expressly given to his wife a life estate in "my entire estate, both real and personal," and to hold that Narcissus at his death became vested with the fee simple title to the one hundred acres would be wholly inconsistent with the devise to the wife for life. If the language had been "at the termination of my life with my wife" there would be much force in the contention and it might with reason be held that he thereby intended as to the one hundred acres to modify the former devise to his wife for life to that extent; "termination of life with my wife" when considered with all the other provisions of the instrument could have meant nothing except "at the death of my wife."

The judgment of the chancellor is in accord with these views and is affirmed.