### Ford v. Jones, et al.

(Decided, December 16, 1927.)

(Rehearing Denied, with Modification, March 2, 1928.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Wills.—Question as to time to which words of will refer in disposing of property to "surviving children, if any, or their natural heirs," must, if possible, be answered by will itself without resort to rules of construction.

2. Wills.—Under provision of will that survivor of two sons should hold property "until his death when it must be divided between all my surviving children, if any, or their natural heirs," determination as to who are remaindermen must be made at time of death of surviving life tenant.

3. Wills.—Where gift to survivors is preceded by particular estate for life or years, words of survivorship, in absence of anything indicating contrary intention, usually refer to termination of particular estate, such as at death of life tenant.

4. Vendor and Purchaser.—Where will gave property to two sons till survivor's death, remainder to "all my surviving children, if any, or their natural heirs," satisfactory title cannot be conveyed by children and heirs surviving testatrix but not surviving life tenants, by conveyance under Ky. Stats., sec. 2341, since members of benefited class cannot be known till surviving life tenant dies, and "natural heirs" are bodily heirs, not collaterals.

5. Wills.—Under provision of will granting remainder to "my surviving children, if any, or their natural heirs," word "or" includes within benefited class by substitution natural heirs of deceased children; words "or their natural heirs" being not words of limitation but of purchase.

6. Wills.—Where, under provisions of will, gift to class is postponed till after termination of preceding estate, as a rule those members of the class, and those only, take who are in existence when such preceding estate terminates and time for distribution comes.

BEN S. WASHER for appellant.

BURNETT, BATSON & CARY for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellees, whom we shall refer to as the plaintiffs, started this litigation for the purpose of compelling the defendant, L. C. Ford, to accept a deed they had made and tendered to him in consummation of a contract they had with him. Plaintiffs were successful, and Ford has appealed.

There is no dispute about the contract whatever. The defendant admits that the deed tendered fully complies with the contract in other respects, but he has declined to accept it, because it does not, as he claims, convey him good title for the simple reason that the plaintiffs themselves have not good title to the property.

The plaintiffs are claiming title under the will of Eliza A. Jones, and that instrument is before us. It was made in 1903 and was probated in 1912. After making certain specific legacies, Mrs. Jones made this disposition of her estate:

"The remainder of my estate, both real and personal, I bequeath to my sons, Thomas Jones and Edward Jones, . . . the real estate to belong to and be controlled by them during their lives jointly, and whichever one survives the other then the deceased's life interest is to revert to the one living to be held by him until his death, *when it must be divided between all my surviving children, if any, or their natural heirs.*" (Emphasis ours.)

Thus we see the testatrix devised her property to Thomas and Edward Jones during their lives, and provided that after their death it must go to a class which

she described as "my surviving children, if any, or their natural heirs." The question which produced this litigation is: Just who are the members of this class? If Eliza A. Jones had died intestate, her property would have descended thus: One-eighth to her daughter Sallie A. Winand; one-eighth to her daughter Alice Stout; one-eighth to her daughter Mary Stout; one-eighth to her son J. L. Jones; one-eighth to Orius M. Maple, only son of her deceased daughter Mattie Maple; one-sixteenth to James E. Comley, son of her deceased daughter Lula P. Comley; one-sixteenth to Lula B. Fleck, daughter of Lula P. Comley; one-eighth to her son Thomas Jones; one-eighth to her son Edward Jones. Plaintiffs contend that these are the persons who compose the class to take this property after the death of Thomas and Edward Jones. All of these parties are now of full age, and the first seven, believing they had title and right so to do, their respective husbands and wives uniting, have undertaken by deed to convey all their interest in this property to Thomas and Edward Jones. By section 2341, Ky. Stats., they are authorized to convey such interest as they had. Thomas and Edward Jones believed that they and the other members of the class named above owned all of this estate, and, accordingly, after this deed was made, they regarded themselves as the absolute owners of this property, and contracted to sell it to Ford. To carry out that contract, they made and tendered to Ford their deed to it, which Ford declined to accept because, as he contends, this will only gave this property to Thomas and Edward Jones for their lives, with remainder after their deaths to the parties who shall then be the surviving children of Eliza A. Jones, if any or their natural heirs, and this suit resulted.

The first question to determine is: To what time do the words "my surviving children, if any, or their natural heirs," refer? Plaintiffs contend they refer to the death of Eliza A. Jones, and Ford contends that they refer to the death of the surviving life tenant. This question must, if possible, be answered by the will itself, without resort to other well-known rules of construction, and when we examine the will we observe that after creating this life estate, and providing that Thomas and Edward Jones should enjoy the property jointly, she then provided that when one of them died, then his life interest should go to the other, and be held by him until

his death, and immediately after that word "death" she used the word "when" to introduce the next phrase, thus indicating that it was at the time of the death of the survivor of these two life tenants that she intended her property should pass in remainder. We are unable to see how there can be any question about the correctness of that conclusion, but if it were possible to raise a doubt about it, so that it would be necessary to resort to other assisting rules of construction, and the presumptions of law arising from them, the result would be the same. According to the view adopted in the earlier English cases, and by some of the American courts, as in Georgia, Indiana, Michigan, Pennsylvania, and Virginia, there is a presumption that, in the absence of any indication of contrary intention, words of survivorship in a testamentary gift of a remainder after a life estate referred to the time of the death of the testator; while in the later English cases, and in American jurisdictions other than those above enumerated, the presumption is that words of survivorship refer to the period of distribution of the estate in remainder. The rule is thus stated in 28 R. C. L. 260:

> "Ordinarily words of survivorship in a legacy are referable to the time of the testator's decease, so as to avoid lapse, but where the period of enjoyment is postponed by interposing a life estate or other particular interest, and the remainder is given to the survivors of a class, the word 'survivors' means those surviving at the termination of the particular estate, or at the time for the payment or distribution of the subject-matter of the gift. The word 'surviving,' in a will devising property to testator's wife for life, and adding, 'But on her decease I give and devise the same to my surviving children to be divided equally between them,' has been held to refer to the children surviving on the wife's decease.' "

In 40 Cyc. p. 1511, the rule is stated in this way:

> "Where the gift to the survivors is preceded by a particular estate for life or years, words of survivorship, in the absence of anything indicating a contrary intention, usually refer to the termination of the particular estate, such as at the death of the life tenant."

In the case of Wren v. Hynes' Adm'r, 59 Ky. (2 Metc.) 129, Judge Simpson, writing for this court, stated the rule in this way:

"It may, however, be remarked that, when the word survivor is used in connection with a *distribution* of the subject of the gift, to be made at some period subsequent to the time of the death of the testator, the word seems naturally and properly to refer to the period of *distribution*. In such a devise a future time or event is fixed upon, when the surviving devisees shall receive the thing given; and the most obvious meaning of the term, when thus used, is, that the devisees then surviving are the persons intended to be embraced by it." (Emphasis ours.)

In the case of Best v. Conn, 73 Ky. (10 Bush) 36, the provision of the will the court had before it was:

"If either of the aforesaid legatees die without issue, then the portion which he or they were entitled to is to go to the survivors equally."

Alfred Best had died after the testator, and there was a question whether this word "survivor" was referable to the death of the testator, Ebenezer Best, or to the death of his devisee, Alfred Best. Judge Peters, writing for this court, said:

"We conclude therefore that the devisees of the testator to whom he devised his land for life, and who survived the devisee, Alfred Best, on his death, took the portion set apart to him to the exclusion of the children of William Best, deceased."

This court had a similar question before it in the case of Ferguson v. Thomason et al., 87 Ky. 519, 9 S. W. 714, 10 Ky. Law Rep. 562. Judge Holt, writing for this court, used this language:

"The next point to be determined is, to what time did the testator refer when he speaks in the codicil of any of his children dying without issue? Upon the determination of this question hinges the quality of the appellant's estate in her portion of the property. Did he refer to the period of his own death, or to the termination of the life estate of the widow when the children devisees would come into

possession, or to an indefinite period of dying without issue?

"No iron rule can be established as applicable to words of survivorship. It would be unreasonable, because it would often violate the intention of the testator, which must be sought from the entire instrument; and if so found, it, and not any general rule of interpretation, must govern the direction and disposition of the bounty. Generally speaking, a testator is not supposed to contemplate the death of the object of it in his own lifetime. Where, therefore, there is another point of time to which the words relative to dying may relate, they will be construed as referring to the event of the death of the devisee at any time prior to that period.

"Where, however, a devise is made to several as a class with words of survivorship annexed, and the gift as to enjoyment is to take effect immediately upon the death of the testator, the rule is to refer the words of survivorship to that event, and to construe them as intended to provide against the contingency of the death of the devisee during the lifetime of the testator.

"If, however, the gift is not to take effect until the termination of a particular estate, and by reason thereof the distribution of the bounty is to take place at some time subsequent to the time of the testator's death, then the most natural meaning of the words of survivorship is, that they relate to the period of distribution; and this is now both the English and American rule."

We had a similar question before us in the case of Deskins et al. v. Williamson et al., 106 S. W. 258, 32 Ky. Law Rep. 539. Judge Lassing, writing for the court, referred to and quoted from the opinion in the Ferguson case.

Thus we see that by the terms of this will itself, as well as by the rules of construction, the point of time to which this expression, "surviving," refers, is the death of the surviving life tenant and the members of the class to whom the testatrix devised this remainder cannot be known or ascertained until the death of the surviving life tenant. We know Thomas and Edward Jones themselves can never have any interest in this land other than their

life estates. Their mother understood that, and in her will speaks of their interest as a life interest. The interest of their children, if any, in this remainder and the interest of the other children of Eliza A. Jones or the natural heirs of such as may be dead, therein, are all contingent upon their being alive when the surviving life tenant dies. When that time comes, Sallie A. Winand may be dead, and her present contingent interest in this property may then be the absolute property of some child or children of hers, and if she then have no issue, it may lapse entirely, for "natural heirs" means bodily heirs, not collaterals. The same is true of Alice Stout and all the others. Hence it may happen that when that time comes, this land may, under the will of Eliza A. Jones, pass to and be claimed by still other parties yet unknown, but who will then compose the benefited class, who will then be either the surviving children or the natural heirs of the children of Eliza A. Jones.

The appellees cite the case of Smith v. Tevis et al., 10 Ky. Op. 588, wherein the words "surviving children" were used, and held to mean the children surviving at the death of the testator, which clearly was correct, for that litigation grew out of the first clause of the will of Salia E. McKinney, which is:

> "It is my wish after my death that all of my property personal and real, be equally divided among my children. If one should die, then their proportion of my property should be equally divided among my surviving children."

That testator knew, of course, that his children must die at some time, and, when he used the word "if," he must have referred to some definite time or occurrence, and the words as used had reference to death within the lifetime of the testator, and hence "surviving children," as used in that will, meant children surviving the testator.

The plaintiffs rely on the case of Weil v. King, 104 S. W. 380, 31 Ky. Law Rep. 1010. In that case the testator gave certain property to his widow for her life, and then provided: "All of which property at her death shall be equally divided between my heirs, per stirpes." The absence of the word "surviving" or any similar expression in that will so clearly distinguishes it from the will

before us, that further comment on that case is unnecessary.

Plaintiffs have placed great emphasis upon the case of Grimmer v. Friederich, 164 Ill. 245, 45 N. E. 498. The will in that case was practically this:

> "I give to my beloved wife, my real estate durnig her natural life. After the death of my wife all of my estate shall be equally divided among my surviving children and their heirs."

The Illinois court held the interest of these children was not contingent upon their surviving their mother. That case does not apply here because there is a distinction between the expression, "my surviving children and their heirs" and "my surviving children, if any, or their natural heirs."

Webster's New International Dictionary defines "and" as, "A particle expressing the general relation of connection," and defines "or" as "A co-ordinating particle that marks an alternative." Both words are conjunctions. "And" is a copulative conjunction. "Or" is a disjunctive conjunction. "Or" signifies and the use of it indicates a substitution; it marks an alternative. In the will before us it serves to include within the benefited class, by substitution, the natural heirs, of any of Mrs. Jones' children who may be dead when the surviving life tenant dies.

The Supreme Court of Illinois, in the case of Ebey et al. v. Adams et al., 135 Ill. 80, 25 N. E. 1013, 10 L. R. A. 162, had before it a question more like this one. The testator had devised certain property to his widow for life, and directed his executors at her death "to distribute among my children or their heirs." The court held this to be a contingent remainder, and in its opinion said:

> "The words 'heir' or 'their heirs' are technically words of limitation; but in this and other cases they are used as words of purchase, and always have that operation when it sufficiently appears that the term is used to designate a particular person, or particular persons who may stand in that relation at the happening of a certain event or at a certain period, and not to the whole line of heirs in succession. No one can have heirs while living. The word 'or,' therefore, as here used, indicates substitution and the payment or distribution is to be made at a

fixed period—i. e., upon the sale by the executors after the termination of the intermediate estate. It would seem clear, therefore, that the persons who were to take are such of the children as might be living at the time of distribution, and the heirs of such as might have predeceased.''

That court had before it a similar will in Potter v. Potter et al., 306 Ill. 37, 137 N. E. 425, and its holding was:

''Under will giving testator's wife an estate for life, at her death all the property to be equally divided between 'our living children or to their living heirs, each of our children to share equal and alike,' the estate so devised to the children was a contingent remainder, under the rule that a gift to survivors which is preceded by a particular estate, at the expiration of which the gift is to take effect in possession, will take effect in favor of those only who survive the particular estate.''

A very similar question was before this court in the case of Wren v. Hynes, 59 Ky. (2 Metc.) 129. The clause in that will was:

''It is my will and desire that when my youngest child shall arrive at the age of twenty-one years, that the twelve thousand dollars set apart in bank stock shall be equally divided among all my surviving children, or their heirs.''

One of these children married the appellant Wren. Testator's youngest child became of age in 1856; that was the period of distribution. Mrs. Wren had been dead 14 years. Her husband, the appellant, claimed her interest in this property had vested in Mrs. Wren at the death of the testator and now belonged to him. The court held Mrs. Wren's interest was contingent on her living until the time for distribution came, and as she did not do so, her husband as her representative was entitled to nothing, and in the opinion said:

''The devise in question does not merely direct that at a particular time the bank stock shall be equally divided among all the testator's surviving children; it also adds, 'or their heirs.' These words were evidently intended to be taken distributively,

and must be understood as referring to the heirs of
such as might be dead at the time of distribution.
They were not used as words of limitation.
. . . The word heirs is used in a different manner
from that in which it is ordinarily used when in-
tended to operate as a word of limitation. In such
cases it is preceded by the word and, instead of or,
. . . They were intended to operate as an alterna-
tive devise, or a devise over, in the event that any of
the children should die leaving issue before the
period of distribution. . . . This construction is
fully warranted by the case of Robb v. Belt and
Milam, 12 B. Mon. 643.

"In that case the testator gave to his wife all his
real and personal estate, during her life or widow-
hood, and directed it to be equally divided among his
eight children, 'or the heirs of their bodies,' at the
termination of her estate. And it was decided that,
by a proper construction of the devise, the division
was to be made between the testator's children who
were living at the time of the event referred to, and
the heirs of the bodies of such as might then be
dead. . . .

"But the question with respect to the time that
the survivorship is to be regarded as referring in a
case like the present, is not, as it was assumed to be
in the argument, an entirely open question in this
court. It was considered and decided in the case of
Hughes v. Hughes, 12 B. Mon. 115. In that case cer-
tain property was devised to the testator's grand-
children, when they became of age or married, and
'the property, in the event of the death of any one
or more of said children, the survivors were to in-
herit.' The death mentioned in the devise was held
not to refer to the occurrence of that event in the
lifetime of the testator, but to its occurrence at any
time prior to the period when the devisees should
become of age or marry. That decision is an express
authority in this case, and is exactly in point. . . .

"The principal reason which influenced the
courts to construe words of survivorship, when con-
tained in a will, to refer to the time of the testator's
death, was, that the issue of the devisee or legatee
who died before the period of distribution might, by
referring the survivorship to that period, be de-
prived of the benefit of the devise to the ancestor,

which result was supposed to be inconsistent with the intention of the testator. That reason does not, however, exist in this case. Here such a result was guarded against by the testator himself by the terms of the devise. If any of his children should die, 'their heirs,' by whom he evidently meant their issue, were to take the share of the deceased parent. If they should die without issue, then the survivors would be entitled to it.''

We have quoted from this case rather extensively because of its controlling applicability.

These words, ''or their natural heirs,'' as used in this will, are not words of limitation; that is, they do not mark or define the estate devised or the period of its duration, but are words of purchase, and are used to describe those who shall take in the contingency that one or more of Mrs. Jones' children shall be dead when the time for distribution comes. Mrs. Jones, having first named a class (her surviving children, if any) that was to take her property upon the death of the surviving life tenant, then by these words of purchase (''or their natural heirs'') names and includes others in this benefited class, and provides alternates who may take the share of such of her children as may then be dead. Thus clearly the members of the benefited class cannot be known until the surviving life tenant dies, and until then, this remainder is contingent.

In the case of Sledd v. Rickman, 192 Ky. 823, 234 S. W. 610, the testator devised his estate to his wife and provided: ''At the termination of life with my wife, . . . my daughter, Narcissus, . . . if she be living,'' shall ''have 100 acres of . . . land.'' Narcissus died before her mother, but she made a will, and undertook to devise her property to two nephews. The question before the court was: Did she by her father's will take a vested interest in this property, or did she only take an interest contingent upon her outliving her mother? We held she took a contingent interest.

In the case of Lindenberger v. Cornell, 190 Ky. 844, 229 S. W. 54, the testator devised his property to his widow during her life. At her death two-thirds was to go to his mother, but if the mother died before his widow, that two-thirds was to go to his brothers and sisters. We held the brothers and sisters took a contingent remainder.

In Whallen et al. v. Kellner et al., 104 S. W. 1018, 31 Ky. Law Rep. 1285, the testator devised his property to a trustee for the use of his children during their lives, with remainder to such of their children or descendants of their deceased children as might be living at the death of the life tenants, and we held that these remaindermen took contingently.

In Jailette et al. v. Bell et al., 110 S. W. 298, 33 Ky. Law Rep. 159, $5,000 in money and $500 in furniture was devised to Lucy Van Dalsem, with provision that upon her death it should pass to her issue if she should leave issue living at her death. The court held that the children of Lucy Van Dalsem took contingent remainder in this estate.

In Loeb v. Struck, 42 S. W. 401, 19 Ky. Law Rep. 935, the testator gave his property to his wife as long as she remained his widow and provided that after her death it should go to his children, who may be living or legal heirs of them who may die. We held the remaindermen took only a contingent interest.

In Birney v. Richardson, 35 Ky. (5 Dana) 424, we followed Lord Eldon's view in Wilmot v. Wilmot, 8 Vesey, Jr., page 12, and held the word "survivors" was used synonymously with the word "others"; but we departed from the ruling in Best v. Conn, 73 Ky. (10 Bush) 36, and we have since adhered to that departure. See Bayless v. Prescott, 79 Ky. 254.

Many valuable notes may be found in 25 L. R. A. (N. S.) 888.

In Boone v. Dykes' Legatees, 19 Ky. (3 T. B. Mon.) 529, we said:

"Remainders are contingent when the estate is limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event."

The remaindermen in this case are dubious and uncertain. No one can know, until these two life tenants are dead, just who will compose the benefited class. Until that time comes, the interest of these remaindermen in this property is merely a contingent interest. They may now sell what interest they have, and when the last of these life tenants dies, other parties now unknown to this court may then answer the description given in this will and be members of the benefited class. Clearly, the remainder here is a contingent remainder, and belongs in the fourth class as described in Mr. Fearne's splendid

classification which is quoted in 23 R. C. L. p. 513 et seq. Hence it follows that title tendered, and which is derived from those who survived testatrix and who may not survive Thomas and Edward, is not satisfactory, and Ford should not have been required to accept it.   Where, under the provisions of a will, a gift to a class is postponed until after the termination of a preceding estate, as a rule, those members of the class, and those only, take who are in existence when such preceding estate terminates, and the time for distribution comes.   The number of pieces into which the pie shall be cut and the parties to whom they shall be passed is determined by those of the class present when the time for cutting comes.

The judgment is reversed.