## Kurrie et al. v. Kentucky Trust Co. of Louisville et al.

May 17, 1946.

As Extended on Denial of Rehearing June 11, 1946.

Harry R. Kurrie and Wm. Hill Mackey for appellants.

Robert J. Denny and R. L. Bronaugh for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Melancthon Young died on Feb. 11, 1924, a resident of Jessamine County, Kentucky. The first paragraph of his will provided for the payment of debts; the next six paragraphs made certain small bequests to designated persons; the tenth paragraph directed the sale of his farm and the eleventh named the Louisville Trust Company as trustee, and a friend, Robert J. Denny, as executor. The eighth and ninth paragraphs of the will read:

"8th. I have not made any provision in this will for my nephew Lawrence A. Young, nor my niece, Josephine Mann Kurrie, not because of any want of love but because I know that they are bountifully provided for.

"9th. All the residue of my property of every kind and description and wheresoever situate, it is to be divided by my Executor in the following bequests and according to the following conditions, to-wit:

"(A) To my nephew, Robert M. Mann the one-fourth thereof.

"(B) The one-fourth thereof is to be held in trust by the Louisville Trust Company of Louisville, Kentucky, and the income therefrom is to be paid to my niece, Mary Y. Bedinger, for and during her lifetime, said income to be paid to her annually and at her death this bequest so devised to her is to be equally divided among the following: My sister, Josephine Young, my nephew, Robert M. Mann and my nephew, Robert H. Young, share and share alike, and if either of the above named should die before Mary Y. Bedinger, the said decedent's share is to be equally divided among the survivors.

"(C) The one-fourth thereof is to be held in trust by the Louisville Trust Company, of Louisville, Kentucky, and the income therefrom is to be paid to my nephew Robert H. Young, for and during his lifetime, said income to be paid annually and at his death the same is to go to his child and wife absolutely.

"(D) The one-fourth thereof is to be held in trust by the Louisville Trust Company of Louisville, Ky., and the income from the same is to be paid to my sister Josephine Young, for and during her lifetime, said income to be paid annually, and at her death I give the

portion devised to her above to my nephew Robert M. Mann, my nephew Robert H. Young and my niece Mary Y. Bedinger and my niece Elizabeth Young, in equal shares.''

The life tenant, Mary Y. Bedinger, outlived all the remaindermen, who died in this order: Josephine Young, testate, Robert H. Young and Robert M. Mann, both intestate. The Kentucky Title Company succeeded the Louisville Trust Company as trustee and instituted this declaratory judgment action against the heirs of the testator and the heirs of the two remaindermen 'who died intestate and the devisee of the one who left a will, for a construction of the will of Melancthon Young, and as to what disposition to make of about $21,000 left in trust under ''Clause B'' of the ninth paragraph thereof.

The chancellor held that the three remaindermen took a vested interest under ''Clause B'' of paragraph 9 which was not defeated by the death of all three of them before the death of the life tenant, and that part of the estate covered by ''Clause B'' was held by the three remaindermen absolutely and in equal portions at their death and went to the heirs of the two dying intestate and to the devisee of the third, who left a will.

Even a casual reading of ''Clause B'' shows that the judgment of the chancellor is erroneous. That clause contains this language: ''If either of the above named (the remaindermen) should die before Mary Y. Bedinger, the said decedent's share is to be equally divided among the survivors.'' Josephine Young died first, followed by Robert H. Young and the last to die was Robert M. Mann. Thus, even under the erroneous construction of the chancellor we are at a loss to understand how he arrived at the conclusion that each of the remaindermen took under the will, rather than to have held it all went to the last surviving remainderman.

The heirs of the testator, Melancthon Young, prosecute this appeal and insist that the devise to the three remaindermen was defeated by their death prior to that of the life tenant, and that under KRS 394.500 this lapsed legacy passed as in case of intestacy, since there was no contrary intention appearing in Mr. Young's will. It is the contention of appellees, who are the heirs and the devisee of the three remaindermen, that the estate the latter took under ''Clause B'' was never de-

feated and the chancellor correctly ordered the property distributed to them, there being no controversy among them.

As we read the briefs, there appears to be no conflict between the parties that the plain language used by testator in "Clause B" vested this trust fund in the three remaindermen upon the death of testator, subject to the life estate of Mary Y. Bedinger, and subject to be defeated in the event the remaindermen failed to survive her. Thus the will created a defeasible fee in the remainder; Gray v. Gray, 300 Ky. 265, 188 S. W. 2d 440, 160 A. L. R. 633, and such an estate may be created in personal as well as in real property. Sherley v. Sherley, 192 Ky. 122, 232 S. W. 53.

But appellees insist there are two conjunctive contingencies expressed in the will to defeat the fee created, and that under the authority of Carrol v. Carroll's Ex'r, 248 Ky. 386, 58 S. W. 2d 670, both contingencies must happen to defeat the fee. They have correctly stated the rule, but have failed to point out the double contingencies. There is but one contingency contained in "Clause B," which is that the remaindermen must survive the life tenant, otherwise the fee is defeated. Appellees state the two contingencies thus: "First, that the remaindermen should die before the life tenant, and second, that one or more of the other remaindermen should survive the life tenant and that there would be a survivor among the remaindermen, who should outlive the life tenant." It is evident this is but stating a single contingency, first in negative form and then in positive form.

Appellees next urge with great earnestness the presumption of law against partial intestacy, citing Schiedel v. Murphy's Ex'r, 300 Ky. 341, 188 S. W. 2d 468, saying if the will did not dispose of the trust fund, part of it would go to testator's heirs named in the eighth paragraph—the very thing testator sought to avoid.

It is true the legal presumption is against partial intestacy; also, that the cardinal rule used in the construction of wills is to arrive at the intention of the testator from the will as a whole. But as we have so many times written: "The question in each case is not, 'What did the testator mean or intend to say?' but, 'What is meant by what he said?'" Fowler v. Mercer's Ex'r,

596

170 Ky. 353, 185 S. W. 1117, 1119; Wright v. Singleton, 190 Ky. 657, 228 S. W. 38.

There can be no doubt that the clear language used here by testator in the residuary part of his will created a defeasible fee. When that fee was defeated by the death of the remaindermen before that of the life tenant, the devise was incapable of taking effect and this lapsed legacy passed as in case of intestacy to testator's heirs. KRS 394.500; Chrisman v. Allman, 302 Ky. 144, 194 S. W. 2d 175.

The testator did not inhibit any of his estate from going to either of the persons named in paragraph 8. On the contrary, he gave as the reason that he devised nothing to them was because he knew bountiful provision already had been made for them. Under KRS 394.-500 the lapsed legacy must descend as in case of intestacy to the heirs at law of testator, Melancthon Young.

The judgment is reversed and another will be entered to the effect that Melancthon Young died intestate as to the trust fund covered by "Clause B" in the ninth paragraph of his will and it will direct the fund to be distributed among testator's heirs at law as of Feb. 11, 1924, the date of his death.