**ELLIS et al. v. PAXTON et al.**

Civ. A. No. 662.

United States District Court
W. D. Kentucky, at Paducah.

July 16, 1953.

Connerat, Dunn, Hunter, Cubbedge & Houlihan, Savannah, Ga., Wheeler & Marshal, Paducah, Ky., Wyatt, Grafton & Grafton, Louisville, Ky., for plaintiffs.

Smith, Reed & Leary, Frankfort, Ky., for defendants T. A. Paxton and Joseph J. Leary.

E. Palmer James, Paducah, Ky., J. Dudley Inman, Louisville, Ky., for intervenors, Betty F. Graves, Murrell B. Flournoy, and George C. Flournoy.

Paul R. Smith and Douglas Forbes, Santa Monica, Cal., David R. Reed, Paducah, Ky., for intervenor David Flournoy.

SHELBOURNE, Chief Judge.

September 10, 1925, George A. Flournoy executed his will and died in November of 1928. His will, excluding attestation certificate, as probated, is as follows:

"I, George A. Flournoy, of Paducah, McCracken County, Kentucky, being of sound mind and disposing memory do hereby make and declare this to be my last will and testament, hereby revoking any and all former wills or codicils heretofore made by me.

"1st. I wish all my just debts, including my funeral expenses, to be first paid out of my estate.

"2nd. I give and bequeath to my nephew, Everett Ellis, twenty-five (25) shares of the preferred Stock of Southern Textile Machinery Company, said shares to come out of the certificate for fifty (50) shares of stock of said corporation heretofore loaned to him by me, said twenty-five shares of stock to be his absolutely. I direct my hereinafter named executors to not call for the return of the remaining twenty-five (25) shares of said stock until after five years from the date of this, my will.

"3rd. I hereby give and bequeath to my sisters, Mary Flournoy and Carrie Flournoy Ellis, of Webster Groves, Missouri, in equal shares, the sum of Ten Thousand ($10,000.00) Dollars, to be paid them either in money or in property or in shares of stock as they may agree upon, same to be their absolutely.

"4th. I hereby give and bequeath to Citizens Savings Bank at Paducah as Trustee, for the use and benefit of my wife, Anita P. Flournoy, for and during the period of her natural life, all of the balance of my estate of whatsoever character or kind, wherever situated, to be held in trust for her by said Trustee or its successors, and the income therefrom to be paid over to her in regular quarterly installments, as may be required for her maintenance and support, and for the purpose of carrying out this clause of my will, I hereby authorize and empower said Trustee, or its successors in said trust, to sell, transfer, convey, change, alter and invest and reinvest, from time to time as same may be required, all of said trust estate, and the purchaser shall not be required to look to the application of

the proceeds of any such sale or sales. In the event it may become necessary, my wife, may, on motion in the McCracken County Court, require said Trustee, or its successors, to execute bond for the faithful discharge of said trust.

"Upon the death of my wife, the trust estate herein devised for her use and benefit, shall immediately pass to and vest in my sisters, Mary Flournoy and Carrie Flournoy Ellis, or the survivor of them, to be theirs absolutely.

"5th. I hereby authorize and empower my hereinafter named executors to sell and convey any part of my estate, real or personal, that may be necessary to the proper execution of this, my will, and authorize them to make such transfers, deeds and conveyances as may be necessary to that end.

"6th. I hereby appoint my wife, Anita P. Flournoy, and my friends, W. P. Paxton and J. D. Mocquot, as executrix and executors of this, my will, and direct that no inventory of my estate be filed in the County Court.

"In Testimony Whereof, I have hereunto set my hand to this and the foregoing one page this 10th day of September, 1925.
"George A. Flournoy"

It will be noted that he devised 25 shares of stock of the Southern Textile Machinery Company to his nephew Everett E. Ellis, who was the son of Carrie Flournoy Ellis, a sister of the testator.

By the third clause, he devised to Mary Flournoy and Carrie Flournoy Ellis, his only sisters, $10,000 each, either in money or stocks. The remainder of his estate he devised to the Citizens Savings Bank at Paducah for the use and benefit of his wife, Anita P. Flournoy, during her life and it is the last literary paragraph of that clause of the will, creating the trust estate and providing for its disposition upon the death of Anita P. Flournoy, that made necessary the resort to the Courts to have the will construed and the rights of the various claimants determined, as provided for in Sections 2201 and 2202 of Title 28 U.S.C.A.

Jurisdiction exists in this Court by virtue of the diversity of citizenship existing between all of the plaintiffs and all of the defendants.

The undisputed facts disclosed by the stipulation and by deposition are that Mary Flournoy, testator's sister, died testate in March of 1948, unmarried and without issue. She devised by her will all of her estate to a niece, Irene S. Flournoy, a daughter of David Flournoy, the latter being a brother of George A. Flournoy, not mentioned in the will.

Carrie Flournoy Ellis, testator's other sister, died May 6, 1952, and left surviving her one son, plaintiff Everett E. Ellis, who was the residuary legatee under his mother's will.

Anita Patterson Flournoy, widow of George A. Flournoy, died July 29, 1952.

David Flournoy, testator's only brother not mentioned in the will, died in 1948, leaving surviving him five children, Irene S. Flournoy, Betty Flournoy Graves, Murrell B. Flournoy, George C. Flournoy and David Flournoy, Jr.

The various contentions of the parties in this proceeding may be summarized as follows—

Plaintiffs Everett Ellis and Irene S. Flournoy plead in the alternative—

1. The remainder interest in the residuum of the estate, which was placed in trust, vested immediately an indefeasible interest in the two sisters of the testator upon his death and that the respective interests are now vested in the plaintiffs as devisees of said sisters.

2. The alternative claim is that the remainder interest in the trust estate passed to Carrie F. Ellis upon the death of Mary Flournoy, subject, however, to the life estate of Anita P. Flournoy, and was owned exclusively and indefeasibly by Carrie Flournoy Ellis at the time of her death and under her will passed to her devisee and son, the plaintiff, Everett E. Ellis.

As to the phrase in Clause 4 "or the survivor of them, to be theirs absolutely", plaintiffs claim that this was not the expression by the testator of a condition pre-

cedent to the vesting of the remainder in one or both of his sisters, nor was the expression by the testator of a condition subsequent, which would operate to divest either one or both of the sisters of the remainder, but that on the contrary, it was an alternative devise designed by the testator to be operative, if at some time in the future, after the writing of the will, one of the sisters, but not both, should be living.

The only effect this clause could have was to determine whether the remainder went to both of the sisters equally, or whether it should go to only one of them.

Counsel state in their brief "He intended the alternative divise ("or the survivor of them") to be used if the alternative situation presented, that is a situation where one and only one of the sisters was alive." Conversely, he meant that if both sisters were alive or if neither sister was alive, so that there was "no survivor of them", the alternative devise would be ineffectual.

The defendants, Betty F. Graves, Murrell B. Flournoy, George C. Flournoy and David Flournoy, surviving children of David Flournoy, deceased, contend that because of the death of Mary Flournoy and Carrie F. Ellis, prior to the termination of the trust estate, and the death of Anita P. Flournoy, the devise of the corpus of the estate to Mary Flournoy and Carrie F. Ellis lapsed and that George A. Flournoy died intestate as to the corpus of the trust estate, and that Mary Flournoy and Carrie F. Ellis were given a defeasible fee in the corpus of the trust estate, which was defeated by their death prior to the termination of the life estate of Anita P. Flournoy and that the property passed per stirpes to the heirs of decedent George A. Flournoy.

Thomas A. Paxton and James J. Leary are the administrators, with the will annexed, of Anita P. Flournoy, the beneficiary during her life of the trust estate. They claim that Mary Flournoy and Carrie F. Ellis each received a contingent remainder or defeasible fee in remainder, subject to the life estate of Anita P. Flournoy, which contingent remainder or defeasible fee was defeated by the failure of both remaindermen to survive the life tenant Anita

P. Flournoy, and that upon the death of Anita P. Flournoy, the devises to Mary Flournoy and Carrie F. Ellis lapsed and passed under the provisions of K.R.S. § 394.500, "as in case of intestacy", to the heirs at law of George A. Flournoy, as of the date of his death in November 1928.

K.R.S. § 394.500 is as follows—

"Unless a contrary intention appears from the will, real or personal estate, comprised in a devise incapable of taking effect, shall not be included in the residuary devise contained in the will, but shall pass as in case of intestacy."

The administrators, with the will annexed, of the estate of Anita P. Flournoy contend, therefore, that they as the personal representatives of Anita P. Flournoy are entitled to receive one-half of the trust estate as the distributable share George A. Flournoy's widow would have received, as of the date of his death November 1928.

### Conclusions of Law

1. As stated above, there is no dispute with respect to the facts and the case resolves itself into the question of ascertaining under the applicable rules of law the proper construction of the last literary paragraph of paragraph number 4 of George A. Flournoy's will, which is—

"Upon the death of my wife, the trust estate herein devised for her use and benefit, shall immediately pass to and vest in my sisters, Mary Flournoy and Carrie Flournoy Ellis, or the survivor of them, to be theirs absolutely."

Chief Jusice Sims, in Gatewood v. Pickett, 314 Ky. 125, 128, 234 S.W.2d 489, 490, suggested that the true intention of the testator may be gathered " * * * if we but let the will before us speak for itself instead of attempting to construe its plain, unambiguous terms according to a set of abstruse rules * * *."

In Kurrie v. Kentucky Trust Company, 302 Ky. 592, 194 S.W.2d 638, 640, it is suggested that the Court in the exercise of its function to construe a will and to discern the true intention of the testator, should bear in mind that—

"The question in each case is not, 'What did the testator mean or intend to say?' but, 'What is meant by what he said?'"

It should be borne in mind, however, in "letting the will speak for itself" and in undertaking to determine "what is meant by what he said", there are certain well recognized principles of law which must be applied. As said by the United States Court of Appeals for the District of Columbia in Caine v. Payne, 86 U.S.App.D.C. 404, 182 F.2d 246, 248, 20 A.L.R.2d 823—

"The basic, always controlling, rule in the construction of wills is the intent of the testator. If that intent can be discerned in the language of the will, read, of course, in the light of the surrounding circumstances, there is an end to the matter. If it cannot be so discerned, the testator must be presumed to have intended the result which the law has theretofore attached to the language which he chose to use."

It will be borne in mind, as we consider the vital paragraph of the will, which is determinative in this action, that upon the death of George A. Flournoy, both remaindermen Mary Flournoy and Carrie Flournoy Ellis were living and that upon the death of Anita P. Flournoy, the life tenant in the trust, neither remainderman was living.

Four questions are presented.

1. Did the title in remainder to the trust estate vest upon the death of George A. Flournoy or upon the death of the life tenant, Anita P. Flournoy?

2. What estate was devised to Mary Flournoy and Carrie Flournoy Ellis—that is a vested remainder, contingent remainder, or a defeasible fee?

3. Did the deaths of Mary Flournoy and Carrie F. Ellis during the lifetime of the life tenant, Anita P. Flournoy, divest Mary Flournoy and Carrie F. Ellis of any interest either or both had under the will?

4. If Mary Flournoy and Carrie F. Ellis took a vested remainder subject to the life estate of Anita P. Flournoy, did the death of Mary Flournoy prior to the death of Carrie F. Ellis defeat the interest of Mary

Flournoy and place it in Carrie F. Ellis, under the language in the paragraph in question "or the survivor of them"?

Many authorities, domestic and foreign, are cited and discussed by counsel, but all agreeing that the questions are to be determined and the will construed by Kentucky law. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Madden v. Commonwealth of Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590.

■ It will be conceded that one of the cardinal rules of construction of devises is to regard words of survivorship as relating to the death of the testator and words of postponement as referring to the period of enjoyment rather than its vesting. 114 A.L.R. 17.

The factors supporting this rule, according to the above authority, are that (1) it tends to avoid intestacy, (2) it assists in avoiding disinheritance of heirs, (3) it favors equality of distribution, (4) it favors vesting of estates at the earliest possible date, and (5) it avoids construing an estate as contingent, when it is susceptible of being construed as vested.

In Hughes v. Hughes, 12 B.Mon. 115, 51 Ky. 115, the clause in the will bequeathed to testator's three children real estate and personal property "when they become of age or marry". The Court there said—

"To what period then did he refer, prior to which if either of the devisees died, the property devised to him or her was to go over to the survivor? It must have been either the time of his own death, or of the marriage or arrival at full age of the devisee. In the case of an immediate devise, it is generally true, that a devise over in the event of the death of the preceding devisee, refers to that event occurring in the lifetime of the testator, yet this construction is only allowed to prevail where there is no other period to which the words can be referred; because a testator is not supposed to contemplate the death of the object of his bounty in his own lifetime. But where there is another point of time to which such dying may be referred (as obviously in

the case here), the words in question are considered as applying to the event of the death of the devisee at any time prior to the period referred to."

The Hughes case was decided in 1851. In 1859, in the case of Wren v. Hynes' Administrator, 2 Metc. 129, 59 Ky. 129, 131, the Court said:

"Where a devise is made to several persons by name, or as a class, with words of survivorship annexed, it becomes material to determine, in order that a proper construction may be given to the devise, to what period the words of survivorship are intended to refer. If the gift is to take effect in possession immediately after the death of the testator, the uniform rule of construction is to refer the words of survivorship to that event, and to regard them as intended to provide against the contingency of the death of the object of the testator's bounty in his lifetime. In such a devise, when made to several person by name, there is no other period to which the words could be made to refer.

"Where, however, the gift is not to take effect in possession until the termination of a particular estate, the question then is, whether the words of survivorship are to be regarded as referring to the death of the testator, or to the termination of the particular estate, being the time fixed for division or distribution of the subject of the gift.

"In the earlier English decisions it will be found that in such cases the words of survivorship were held to refer to the testator's death. The more modern adjudications have adopted a different rule of construction, and make them refer to the termination of the prior estate."

In Johnson v. Whitcomb, 166 Ky. 673, 179 S.W. 821, the clause in the will devised to a named trustee in trust for testator's wife, the residuum of the estate. The income from the trust estate was directed to be paid to his wife during her life and the will provided further—

"After her death, to be equally divided between my brother and sisters hereinbefore named or such of them as may be living at that time."

The testator died in 1888. All of the brothers and sisters mentioned by name in the will and two other sisters not mentioned by name in the will comprised all of his brothers and sisters, all of whom died prior to the death of the widow, in 1913. After the death of the life tenant, certain children of the devisee remainderman sought to recover possession of property sold in a court action in which the life tenant, all the remaindermen named in the will and the heirs at law of the two sisters not named in the will, were parties.

It was held that the devisees took under this will a vested fee simple in remainder, but that the fee simple was subject to be defeated by their death before that of the life tenant.

In the Case of Ferguson v. Thomason, 87 Ky. 519, 9 S.W. 714, 715, the Court in discussing the rule applicable to words of survivorship said—

"No iron rule can be established as applicable to words of survivorship. It would be unreasonable, because it would often violate the intention of the testator, which must be sought from the entire instrument; and if so found, it, and not any general rule of interpretation, must govern the direction and disposition of the bounty. Generally speaking, a testator is not supposed to contemplate the death of the object of it in his own life-time. Where, therefore, there is another point of time to which the words relative to dying may relate, they will be construed as referring to the event of the death of the devisee at any time prior to that period.

"Where, however, a devise is made to several as a class with words of survivorship annexed, and the gift as to enjoyment is to take effect immediately upon the death of the testator, the rule is to refer the words of survivorship to that event, and to construe them as intended to provide against the

contingency of the death of the devisee during the life-time of the testator.

"If, however, the gift is not to take effect until the termination of a particular estate, and by reason thereof the distribution of the bounty is to take place at some time subsequent to the time of the testator's death, then the most natural meaning of the words of survivorship is that they relate to the period of distribution; and this is now both the English and American rule."

In Fischer v. Porter, 263 Ky. 372, 92 S.W.2d 368, 371, there were two life estates created, to terminate upon the death of each or the death of the first life tenant and the re-marriage of his widow. The language of the will was—

" * * * And upon the death of both of them or the marriage of her the said Margaret, *then* in that or either event the entire estate herein devised to my said son, shall descend to the children of him and the said Margaret, *or the descendents of said children.*" (Italics added.)

The Court of Appeals, 263 Ky. at page 377, 92 S.W.2d at page 371, held that the words "then and in that or either event" and "shall descend" used in connection with the life estate terminating happenings, evidenced a purpose and intention to designate the time when the life estate should terminate and vesting occur and held that it was the intention of the testator to postpone the final vesting of the estate in those who took under the will until the close of the life estate and said—

"Where the language indicates a purpose to or fixes the time of the vesting of the remainder estate, even though the remaindermen be designated as children, it is the rule that the intention of the testator must be carried out in the construction given the instrument."

In In re Mahuson's Will, Sur., 57 N.Y. S.2d 443, 444, the net estate of the testator was placed in trust for the benefit of his widow and provided that "after the death of my wife the residue and remainder of my estate is to be divided among my three

nieces, or the survivor or survivors of the said three nieces," naming them. All three of the named nieces survived the testator and only two of them survived the widow. It was there held that the words of survivorship were referable to the death of the widow, so as to vest the entire estate in remainder in the two nieces who survived her.

The Court held that this language indicated an intention on the part of the testator that the final division was to take place at a future date after his own death and after the death of his widow also and was to be made only among those of the three nieces who might then be living, or if none, then by implication of law, among testator's unmentioned heirs. See also Morton's Guardian v. Morton, 120 Ky. 251, 254, 85 S.W. 1188.

In the case of Caine v. Payne, supra, the testator devised three-fourths of the income from a life estate to his sister and the remaining one-fourth of the income to his niece for and during their respective lifetimes. Upon the death of either his sister or niece, the entire net income should be paid to the survivor during the remainder of her life. The will then provided—

"Upon the death of the survivor of said Anne S. Payne and Estella Caine, [the life beneficiaries of the trust estate] the trusts herein created shall cease and determine and my said Trustee shall pay, set over, assign, convey and deliver my entire estate and property then in its possession, absolutely and in fee simple, share and share alike, unto my nephews, Edwin D. Payne, Edward O. Caine and Bertram Caine, or the survivors or survivor of them."

Prior to the death of the survivor of the two life beneficiaries of the trust, two of the three nephews died survived by their respective widows as next of kin. It was held that the survivor among the three nephews should take the estate, since he alone was living when the last of the two life estates terminated. It was held that the three nephews took a vested remainder upon the death of the testator, defeasible however, in the event the nephew died be-

fore the life estate terminated and that survivorship to the date of the death of the last of the life beneficiaries was necessary.

In the case of Kurrie v. Kentucky Trust Company, supra, the testator devised one-fourth of the residuum of his estate to the Trust Company, directing that the income be paid to Mary Y. Bedinger during her lifetime and [302 Ky. 592, 194 S.W.2d 639] "* * * at her death this bequest so devised to her is to be equally divided among the following: My sister, Josephine Young, my nephew, Robert M. Mann and my nephew, Robert H. Young, share and share alike, and if either of the above named should die before Mary Y. Bedinger, the said decedent's share is to be equally divided among the survivors."

Mary Y. Bedinger, the life tenant in the trust, survived all the remaindermen. The suit was brought by the Trust Company against the heirs at law of the testator and the heirs of two of the remaindermen and the devisee of the other remainderman, who had died testate. The lower Court held that the three remaindermen took a vested interest which was not defeated by their death prior to the death of the life tenant and that upon the death of remaindermen, their respective interests descended to the heirs of the two dying intestate and to the devisee of the third, who had died testate.

The Court of Appeals reversed and said—

"There can be no doubt that the clear language used here by testator in the residuary part of his will created a defeasible fee. When that fee was defeated by the death of the remainderman before that of the life tenant, the devise was incapable of taking effect and this lapsed legacy passed as in case of intestacy to testator's heirs."

The Court held that the distribution should be among testator's heirs at law as of the date of his death February 11, 1924. See also Ford v. Jones, 223 Ky. 327, 3 S.W.2d 781, and Skiles v. Bowling Green Trust Company, 294 Ky. 211, 171 S.W.2d 235.

Plaintiffs' counsel have cited numerous texts and opinions in support of their contention that Mary Flournoy and Carrie F. Ellis took a vested remainder upon the death of the testator George A. Flournoy and that the language of the will in question "or the survivor of them" meant survivorship at the time of the death of the testator. The most convincing authority cited by them is the case of Montgomery's Executor v. Northcutt, 292 Ky. 622, 167 S.W.2d 317, 318.

W. L. Northcutt left surviving him a married daughter and four sons. He died in 1897. He devised one-fifth of his property to his daughter, Mrs. Montgomery for her lifetime to be "held by her for and during her natural life, and then descend or go to my heirs and children unless she should leave surviving her heirs of her body, in which case her share shall go to her children so left surviving her."

Mrs. Montgomery died in November 1937 childless. The estate consisted of personalty. Two of testator's sons died prior to the death of Mrs. Montgomery, the life tenant in the fund. One of the sons left a widow without children, the other left only children. The Court was asked to determine (1) whether the four sons who survived the testator took under the will a vested remainder in the fund devised for her lifetime to the daughter, if she died without issue, or (2) whether the remainder interest created in the four sons was a contingent remainder, that is contingent upon their survival of the testator and the life tenant.

The Court said—

"If the remainder interest devised to the four sons became a vested one upon the death of the testator, although subject to defeat upon the happening of a future contingency which might or might not happen, then the two sons who died prior to the death of the life tenant had an absolute estate in remainder, subject to be defeated only by the happening of the contingent future event, and their heirs and dis-

tributees inherited the same interest held by their deceased ancestor. *In other* words, a defeasible interest descends to surviving heirs and distributees upon the death of the holder thereof, with the same rights in them as was possessed by their deceased ancestor. * * *

"Therefore, if the interest of the two sons whose death preceded that of Mrs. Montgomery, the life tenant, was a vested one, though defeasible, the rule announced in the cited domestic cases would prevail and the judgment should be reversed since it held that the interest of testator's sons did not become vested until the death of Mrs. Montgomery, which was the time of distribution, and which the court held was also the time of the vesting of the devises to the four sons."

The Court defined "contingent remainder" as "one limited so as to depend on some event or condition which is uncertain and which may never happen or be performed."

There was then pointed out the line of distinction between "vested" and "contingent" remainder,—

" 'The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines.' Such future interest is vested if the remaindermen while living possess the right to take possession upon its becoming vacant by the death of the holder of the particular or preceding estate".

The Court reversed the lower Court, saying—

"In the instant case the deceased brothers of Mrs. Montgomery had the right to possess themselves of their part of the fund involved at any time before their death, if the life tenant had died before they did. Therefore, under the construction made by us in the cited cases, the remainder interest of the four sons created by the will of

W. L. Northcutt, Sr., was a vested interest from and after his death."

■ This Court is of opinion that when we let the will speak for itself and undertake to determine not what testator meant, but what he meant by what he said, we come to the conclusion that he intended that his widow be the recipient of the income of the trust fund during her lifetime and upon her death, the remainder interest in the fund was to pass and vest in his two sisters Mary Flournoy and Carrie Flournoy Ellis, or the survivor of them; that if Carrie F. Ellis and Mary Flournoy had both survived the life tenant, they would have shared the remainder interest in the trust estate jointly and equally or if only one as "the survivor of them" had been living at the termination of the life estate, she would have taken the remainder interest in the trust fund in its entirety, but that neither being alive when the will provided the remainder interest in the trust estate should pass—that is at the death of the life tenant—the devise lapsed because incapable of vesting and the trust estate in remainder passes to the heirs of George A. Flournoy.

It is therefore concluded that the four questions above set out should be answered as follows—

1. The title in remainder to the trust estate vested upon the death of the life tenant, Anita P. Flournoy.

2. The estate devised to Mary Flournoy and Carrie Flournoy Ellis was a contingent remainder, subject to defeat by the survivor of the two in the event she, the survivor, predeceased Anita P. Flournoy, the life tenant.

3 and 4. The death of Mary Flournoy prior to the death of Carrie F. Ellis, during the lifetime of the life tenant Anita P. Flournoy, divested Mary Flournoy of her right to take any part of the remainder of the trust and the subsequent death of Carrie F. Ellis, likewise defeated her right to take on the death of the life tenant.

### Conclusion

The trust estate descends and vests in the heirs of George A. Flournoy as of the date of the death of Anita P. Flournoy;

that is Everett Ellis takes one-half and the remaining one-half vests in the heirs of David Flournoy; that is Irene S. Flournoy; Betty Flournoy Graves; Murrell B. Flournoy; George C. Flournoy and David F. Flournoy, Jr., each take one-tenth of the whole.

Judgment declaring the rights in accordance with this memorandum may be submitted by counsel.